**STEMBRIDGE PRODUCTS, INC.,**
**Plaintiff,**

v.

**Joe GAY and Thomas Sapp, d/b/a Split**
**Tail Mfg., and Split Tail Mfg., Inc.,**
**Defendants.**

**Civ. A. No. 2612.**

United States District Court,
M. D. Georgia,
Macon Division.

Dec. 7, 1971.

George M. Hopkins and William H. Needle, Newton, Hopkins & Ormsby, Atlanta, Ga., for plaintiff.

Wilbur D. Owens, Jr., Bloch, Hall, Hawkins & Owens, Macon, Ga., for defendants.

MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ELLIOTT, District Judge.

This cause having been heard on a motion of Plaintiff for summary judgment on Counts I through VI of the complaint pursuant to Rule 56, Federal Rules of Civil Procedure, and this Court having considered the verified pleadings, the interrogatories and answers to interrogatories, the depositions, the affidavits, the oral testimony in open court, the arguments of counsel and due deliberation having been had thereon, this Court renders the following memorandum opinion:

The Plaintiff has filed a suit under the Lanham Act for alleged infringement of the registered trademark FLIPTAIL Registration No. 732,128, registered May 2, 1962 for plastic fishing lures. The first date of use of the trademark by the predecessor of the Plaintiff, William F. Stembridge d/b/a Stembridge Products, was January 2, 1961. The mark and good will were assigned to Plaintiff prior to issuance of the registration. In the ensuing years, Plaintiff has built up a substantial business throughout the United States in the FLIPTAIL lures, selling over 70 million lures bearing the mark FLIPTAIL. Affidavits under Section 8 (Title 15, United States Code, Section 1058) and Section 15 (Title 15, United States Code, Section 1065) of the

Lanham Act have been filed by the Plaintiff, and therefore the mark of the Plaintiff is to be considered as incontestable.

The certificate of registration is prima facie evidence of the mark's validity, Plaintiff's ownership of the mark and Plaintiff's exclusive right to use the mark FLIPTAIL. Section 15 and 33(b) of the Lanham Act (Title 15, United States Code, Sections 1065 and 1115(b). Under Section 22 of the Lanham Act (Title 15, United States Code, Section 1072), this registration of the mark was and is constructive notice of registrant's claim of ownership thereof.

In addition to the Federal registration of the trademark, the Plaintiff is the owner of a State of Georgia registration of the trademark, which registration was granted to Plaintiff's predecessor on October 25, 1961 and was subsequently transferred to the Plaintiff.

In January, 1970 Defendants, Joe Gay and Thomas (Doc) Sapp, after knowing of the Plaintiff's soft plastic fishing lures and its use of the trademark FLIPTAIL on such goods, adopted and began using the mark SPLIT TAIL on soft plastic worms. By December, 1970 the Defendant corporation, Split Tail Mfg., Inc., was organized with Joe Gay and Thomas Sapp operating this corporate Defendant. Its sole product was the SPLIT TAIL fishing lure.

During the fall of 1970, the Plaintiff notified by letter and by telephone the Defendants, Joe Gay and "Doc" Sapp, of their infringement of Plaintiff's trademark FLIPTAIL by their use of the mark SPLIT TAIL; however, Defendants continued to infringe Plaintiff's mark.

The complaint is in six (6) Counts, Count I being for infringement of the Federal Registration of the trademark FLIPTAIL, Count II being for the infringement of the State Registration of the trademark FLIPTAIL, and Count III being under Title 106, Georgia Code, Section 115 for injury to the business reputation because the Defendants allegedly have diluted the distinctiveness of the trademark FLIPTAIL by the use of their mark SPLIT TAIL. Count IV is under Title 37, Georgia Code, Section 712 for deceptive trade practices arising out of the use of the Defendant's trademark SPLIT TAIL which is asserted to encroach upon Plaintiff's business and is a count for fraud on the public. Count V is a count under the Federal law which asserts a false designation of origin of the goods as prohibited by Section 43(a) of the Lanham Act Title 15, United States Code, Section 1125(a). Count VI is a common law count for unfair competition asserting the common law right of Plaintiff to the trademark FLIPTAIL.

All of the Counts, therefore, hinge on a common question of fact, namely whether there is a likelihood of confusion with respect to FLIPTAIL by Defendants' use of the trademark SPLIT TAIL on the same type of goods. The test of infringement under Section 32(1) of the Lanham Act Title 15, United States Code, Section 1114(1) is whether or not the alleged infringing mark when applied to goods or services ". . . is likely to cause confusion, or to cause mistake, or to deceive . . ." A 1962 amendment to Section 32(1) eliminated after "or to deceive" the following phrase: "purchaser's as to the source of origin of such goods or services". With the removal of the word "purchasers", there is no longer any requirement that there be a likelihood of *customer* confusion—only that there be a likelihood of confusion.

Title 106 Georgia Code, Section 111 has essentially the same requirement for infringement as the Federal law, except that the language of the statute is similar to the language of Section 32(1) prior to the 1962 amendment. Therefore, about the same test may be applied in determining trademark infringement under the Lanham Act and trademark infringement under the Georgia law. That is, is there a likelihood of confusion between the respective marks as applied to the respective goods?

Count III is brought under the State anti-dilution statute, namely

Georgia Code Section 106–115, which precludes a subsequent user from using the same or any similar trademark, if there exists a likelihood of injury to the business reputation or of dilution of the distinctive qualities of the trademark of a senior user, regardless of whether there is likelihood of confusion or actual competition between the parties. Count IV is brought under Georgia Code Section 37–712 which provides that any attempt to encroach upon the business of a trader or other person by the use of similar trademarks with the intention of deceiving and misleading the public is a fraud for which equity will grant relief.

The three Georgia Code Sections are so interwoven with the facts of this case that adjudication of infringement of the State registration will include injury to business reputation and dilution of the mark, as well as use of a similar trademark with intent to deceive. It should be noted at this juncture that intent to deceive may be implied from the similarity of the two marks, the similarity of the packaging and of the goods themselves, and the prior knowledge by the Defendants of the mark. As was stated in 3 Callmann, Unfair Competition, Trademarks and Monopolies 791 (3rd Ed.) (hereinafter cited as Callmann):

> When however there is no reasonable explanation for the Defendant's choice of such a mark, though the field for his selection was so broad, the inference is inevitable that it was chosen deliberately to deceive.

and in Vol. 4, pages 280, 281 the following is stated:

> . . . when the defendant combines deceptive elements or unfair methods, his wrongful intent is manifest, for they would not be combined in that manner unless by the defendant's design. Therefore, 'scarcely anything, of an evidential nature, for example, could more certainly characterize intent than repeated imitation of material parts of another person's trade tokens; the imitations themselves reveal the object.'

Count V charges a false designation of origin in Defendants' goods through its use of the trademark SPLIT TAIL on the goods while Count VI is for common law unfair competition. These two latter counts, while being a Federal violation as alleged in Count V and a common law State violation as alleged in Count VI are included with a finding of infringement of the registered mark, trademark infringement being a more specific form of unfair competition.

■ The facts in this case appear to be undisputed in showing that there is a likelihood of confusion with respect to the trademark FLIPTAIL and the trademark SPLIT TAIL as applied to the respective goods. The case of World Carpets Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 489 (5th Cir. 1971) states:

> While this circuit regards the question of confusion as a fact determination, it is not necessary to show actual confusion. One merely has to show that the likelihood of confusion exists. There can be no more positive or substantial proof of likelihood of confusion than proof of actual confusion. Moreover, reason tells us while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.

It is inferred from the testimony that both the Plaintiff's witnesses and Defendants' witnesses agree that there has been actual confusion. The Defendants by deposition took the testimony of a person whom the Defendants had previously designated in answer to interrogatories as their expert witness, Mr. Lowe Wall, who is the manager of the sporting goods department of Peeler Hardware Company in Macon, Georgia. Peeler sells fishing equipment in an area from Atlanta, south within the State of Georgia, the southeastern part of Alabama and the southwestern part of South Carolina, as well as the northern part of Florida. Mr.

Wall stated upon direct examination by Defendants (p. 8 of the Wall deposition):

Q. Now, the name Flip Tail (sic) as compared to the name Split Tail, do you or do you not think that there is a significant difference as between those two names?

A. I do, yes. I think there is difference, but people are easily confused.

Q. You think some people might be confused?

A. That's correct.

The expert witness, Mr. Wall, on further direct examination stated (p. 11 of the Wall deposition):

Q. Have you yourself had any instances where there have been any customer confusion between Split Tail and Flip Tails (sic)?

A. Not that I personally was waiting on. In other words, I wasn't personally waiting on the customer, but I have heard the two names confused.

Q. All right, would you relate what that confusion was?

A. Now, yes, I have heard customers ask for Split Tails and when they were brought out to them, it was wrong.

Q. It wasn't what they wanted?

A. That's right, they wanted the Flip Tail (sic) and I have also had it happen just in the opposite.

Mr. Wall further stated (p. 18 of the Wall deposition):

Q. Now, so that I am clear on this, you say that these dealers ask for the lure as a Split Tail and then indicated that they want the Flip Tail (sic) lure instead, am I right?

A. That's correct.

Q. And some of the dealers ask for a Flip Tail (sic) and when they said that they wanted a Split Tail?

A. That's right.

Q. Instead?

A. That's right.

Mr. Joe Gay, the President of the Defendant corporation and himself one of the individual Defendants, in his deposition stated that he had heard several fishermen loosely confuse the name SPLIT TAIL and FLIPTAIL but never a buyer. Mr. Gay related that there was a Mr. Collins who caught fish on a SPLIT TAIL lure and when the article was written about him by Mr. Charles Salter of "The Atlanta Constitution", the article stated that it was a FLIPTAIL lure, rather than the SPLIT TAIL lure. Mr. Gay also stated that Mr. Emory Josey, another writer, was talking about FLIPTAIL when he meant SPLIT TAIL. Furthermore, in another deposition, an employee of Peeler Hardware Company remembered an instance of customer confusion between the two marks. An affidavit from Mrs. William F. Stembridge submitted herein shows still another incident of actual confusion between Plaintiff's and Defendants' marks wherein she heard the wife of a sports writer mistakenly refer to the FLIPTAIL lures as SPLIT TAIL lures. Finally, during the hearing on the preliminary injunction, a witness for the Defendants who operated the sports department of Rich's Department Store in Atlanta became confused on the stand upon hearing SPLIT TAIL and thought it was pronounced as FLIPTAIL or vice versa.

The admissions against interest and the testimony in depositions, the affidavits on file, the verified complaint and the testimony of live witnesses at the hearing all show that there were numerous instances of actual confusion which cannot be ignored. Title 38, Georgia Code Section 402. In 3 Callmann 563, Section 80.6, after noting that proof of actual confusion is rare and difficult to find, the following is stated:

Proof of actual confusion can be ignored only when it is clear that the confusion was attributable to extraordinary circumstances or that it only occurred, and could only occur, in a single instance. In rare cases, the extent to which the confusion can be traced, in whole or in part, to the similarity of the marks or to other considerations may be open to doubt. If, however, the plaintiff produces a substantial number of witnesses who

attest to the actual confusion, such proof may indicate the existence of confusion in future. It is, therefore, accurate to say that in every case, even one in which a preliminary injunction is sought, proof of actual confusion is the best evidence.

The evidence in this case, however, does not stop at proof of actual confusion. Indeed, there are numerous other factors which tend to show a likelihood of confusion. For example, the words FLIP-TAIL and SPLIT TAIL are quite similar in sound when spoken. For this reason, the witness, Mr. Edward Withrow, became confused on the stand.

Both the Plaintiff's and Defendants' packages of lures separate to some extent the word "Tail" from the first syllable of the word of the respective marks. Both packages utilize a smiling worm in connection with the marks. The Defendants' worm covers the letter "S" so as to give the appearance of "Plit Tail" which is even more similar to FLIPTAIL. The goods of both parties are displayed on rectangular cards having clear plastic covers. These packages both employ a wavy border. The goods themselves are quite similar. Both marks are displayed with a logo showing two people fishing from a boat. Both logos employ a fish jumping out of water striking the respective lures. Both logos show a fishing line bending into the water and then rising above the water. All of these similarities strengthen the conclusion that there is likelihood of confusion. As stated in W. Vandenburgh, Trademark Law and Procedure 143 (2d ed. 1968) (hereinafter cited as Vandenburgh):

> The accumulative effect of differences (and similarities) between the marks themselves and their respective goods or services with which the marks are used must be taken into consideration in arriving at a decision.

Also, where, as in the instant case, the products to which the marks in question are applied are virtually identical, the similarity in the marks necessary to support a finding of infringement is less than in the case of dissimilar, noncompeting products.

It is noted that the goods of the Defendants and the goods of the Plaintiff are soft plastic worms which are almost indistinguishable. They are sold in direct competition in the sporting goods sections of the same stores. At page 147 of Vandenburgh, the following is stated:

> Thus, where there are similarities in dress of the goods, or packages, trademark infringement (or unfair competition) may be found even though the marks are relatively dissimilar.

The numerous similarities between the respective packages also lead to the conclusion that there was an intent on the part of the Defendants to infringe and trade on the good will of Plaintiff. Vandenburgh at pages 45, 46 states:

> It must be remembered that the law with respect to trademarks is a part of the law of unfair competition. While bad faith or intention to infringe is not a necessary element of an action for trademark infringement (but may be presumed), and good faith is not a defense, the fact that there are factors, other than the similarities in the marks considered in relation to the respective goods or services, which indicate that the second user is actually attempting to take advantage of the good will of the prior user is likely to cause a Court to enjoin the second user where that might not otherwise be the case.

It is to be remembered that the goods are inexpensive soft plastic lures that are sold in high volume and, as such, are purchased by casual purchasers who may have a very faulty memory as to the precise mark applied to the goods.

The Court, therefore, concludes that, as a matter of law, there has been an infringement and a colorful imitation of the registered mark of the Plaintiff in connection with the sale, offering for sale, distribution and advertising of the goods of the Defendants, in connection with which such use is likely to cause confusion and has caused mistake and has deceived the purchasing public.