**ROLLS–ROYCE MOTORS LIMITED**
et al.

v.

**A & A FIBERGLASS, INCORPORATED.**

Civ. A. No. C–75–2013–A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Order Oct. 29, 1976.
Order of Final Judgment Feb. 28, 1977.
As Amended March 11, 1977.

Miles J. Alexander, James H. Coil, Jr., Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for Rolls-Royce Motors Ltd. et al.; Ronald J. Lehrman, Weiss, Dawid, Fross & Lehrman, Donald H. Rivkin, Busby, Rivkin, Sherman, Levy, and Rehm, New York City, of counsel.

George M. Hopkins, Newton, Hopkins & Ormsby, Atlanta, Ga., for A & A Fiberglass, Inc.

## ORDER

HENDERSON, District Judge.

This is an action for injunctive relief and damages brought by Rolls-Royce Motors, Ltd., and its wholly-owned American subsidiary [1] (hereinafter referred to collectively as "Rolls-Royce") against A & A Fiberglass, Inc. (hereinafter referred to as "A & A"). Presently pending are the parties' motions for summary judgment.[2]

This case concerns the manufacture and sale by A & A of automobile customizing kits designed for the Volkswagen Beetle model. Included in this "Elegant Beetle" kit are parts for radiator grill modification and hood ornamentation which the plaintiffs contend are copies of similar parts installed on Rolls-Royce automobiles. The complaint is in six counts and seeks to recover for federal, state and common law

---

1. Rolls-Royce Motors, Inc., a Delaware corporation. No distinction will be made between the two plaintiffs.

2. The defendant's motion for summary judgment goes to the complaint and first counterclaim, whereas the plaintiffs seek to dispose of the action in its entirety.

trademark infringement and unfair competition, injury to business reputation, deceptive trade practices and trademark dilution. The defendant filed a counterclaim for cancellation of the plaintiffs' state and federal trademarks, unfair competition and antitrust violations.

Rolls-Royce is a British corporation which has manufactured Rolls-Royce and Bentley automobiles since 1906. The current Rolls-Royce models are base-priced between $38,000.00 and $90,000.00. Sales volume since 1959 has reached $150,000,000.00 and advertising in the period 1965–1975 exceeded $5,000,000.00.

In 1911, Rolls-Royce introduced a front hood ornamentation in the form of a statuette called "The Spirit of Ecstasy" or, more commonly, the "Flying Lady." It has been used continuously since that time. In the early years of its production the Flying Lady could be turned to unscrew the radiator cap but is now attached directly to the grill and serves no engineering function. Federal trademark registration was first obtained in 1918 and, despite a ten-year lapse in such protection, trademark recognition was again procured in 1968.

Another distinctive feature of the Rolls-Royce automobile is its front grill, square-framed and vertically shuttered and called the "Classic Grill." It was first introduced in 1906 and from 1926 to 1940 the louvers were adjustable, either manually or mechanically, to regulate the flow of air to the radiator. Beginning in 1946 these shutters were fixed at a predetermined angle.[3] The grill on the current Rolls-Royce models is completely dysfunctional. A United States design patent was obtained for the Classic Grill in 1914 but application for federal trademark registration was denied in 1975. Georgia trademark registration for both the grill and the Flying Lady was successfully procured in 1975.

The defendant is a Georgia corporation engaged in the business of selling plastic and fiberglass products, including specialty automobile parts. In March of 1972, A & A began selling and advertising its so-called "Elegant Beetle" package, an assortment of auto parts designed to change the appearance of Volkswagen automobiles. Advertising since 1972 has run into the thousands of dollars and has stressed the likeness of the Volkswagen, as modified, to the Rolls-Royce.

The kit itself includes both a simulated grill and hood ornament bearing striking resemblance, excepting minor details[4] and the difference in fabrication,[5] to the Classic Grill and Flying Lady. The hood ornaments are not manufactured by the defendant but are supplied to A & A by an independent concern.

A & A is not the only firm marketing automotive style-change kits. Although some have voluntarily ceased manufacturing the duplicative Rolls-Royce parts, there is no reason to believe that A & A is the sole remaining supplier.

Rolls-Royce first became aware of the modification kits in mid-1972. The defendant, as well as other purported infringers, was notified of Rolls-Royce' objections to the continued sale of the kits in January, 1973. The letter sent to the defendant made no explicit mention of Rolls-Royce' claim of trademark infringement. A & A failed to reply and the plaintiffs did not attempt further direct contact until August, 1975, when they sent a second letter demanding cessation of the defendant's activities.

In late 1972 or early 1973 Rolls-Royce sought to obtain the cooperation of Volkswagen of America in discouraging continued infringements by kit manufacturers. In response, Volkswagen notified its distributors that their purchase of the kits was

---

**3.** No Rolls-Royce automobiles were manufactured during the period of 1940–46.

**4.** The Classic Grill is emblazoned with a "Rolls-RR-Royce" badge. The simulated grill has no such marking.

**5.** Rolls-Royce grills and statuettes sold as replacement parts cost in the neighborhood of $1,500.00 and $400.00, respectively. The total cost of the defendant's kits ranges from $500.00 to $900.00.

inconsistent with company policy and potentially damaging to its reputation. No direct contact between Rolls-Royce and individual purchasers was made.

Although it is apparent that A & A has refused Rolls-Royce' demand for voluntary termination of its "Elegant Beetle" sales, it is not certain that the defendant has continued its marketing activities in this respect during the pendency of this litigation.

The defendant seeks to avoid liability for trademark infringement at the outset by contending that neither the Classic Grill nor the Flying Lady is capable of trademark recognition. It argues that, to the extent that these parts are functional, protection can be found only in the patent laws and that, to the extent that they are nonfunctional, copyright is the only safeguard. Under this analysis, however, no three-dimensional article, whether utilitarian or not, could ever be the subject of a trademark.[6]

■ Objects which serve some practical purpose are not necessarily precluded from identification as trademarks unless they are primarily utilitarian. See In re World's Finest Chocolate, Inc., 474 F.2d 1012 (Cust. & Pat.App.1973); In re Deister Concentrator Co., Inc., 289 F.2d 496, 48 C.C.P.A. 952, (1961). The Classic Grill at one time had adjustable louvers and the Flying Lady, similarly, could be used to remove the radiator cap. Neither serves such function at the present time. The plaintiffs submitted proof that, not only does the Classic Grill have no mechanical purpose, but that both it and the Flying Lady could be eliminated from the motor car with no effect on its operation.[7]

On the other hand, the defendant maintains that if these two parts are not functional, they are merely ornamental and could be covered only by copyright or design patent. It relies heavily on the landmark case of Sears, Roebuck & Co. v. Stif-

fel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). See also Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938). These cases simply held that articles unprotected by federal copyright or patent laws could not find refuge in state or common law unfair competition principles.

That Sears and Compco did not purport to redefine the permissible scope of trademark protection, however, was made clear in Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg. Inc., 510 F.2d 1004 (5th Cir. 1975), where the court held that copying and sale of hockey team symbols infringed the team's trademarks.

> The argument that the symbols could be protected only if copyrighted likewise misses the thrust of trademark protection. A trademark is a property right which is acquired by use. . . . It differs substantially from a copyright, in both its legal genesis and its scope of federal protection. . . . An individual selects a word or design that might otherwise be in the public domain to represent his business or product. If that word or design comes to symbolize his product or business in the public mind, the individual acquires a property right in the mark. The acquisition of such a right through use represents the passage of a word or design out of the public domain into the protective ambits of trademark law. Under the provisions of the [trademark statute], the owner of a mark acquires a protectable property interest in his mark through registration and use.

Id. at 1013–14. See Truck Equipment Serv. Co. v. Fruehauf Corp., 536 F.2d 1210 (8th Cir. 1976).

There is no doubt that the plaintiffs' Classic Grill and Flying Lady are attractive

---

**6.** If a three-dimensional object is "used by a manufacturer . . . to identify his goods and distinguish them from those manufactured or sold by others," 15 U.S.C. § 1127, then it is eligible for trademark protection. Federal registration has been granted, for example, for the

Mercedes-Benz emblem and the Alfa-Romeo grill.

**7.** The defendant's use of the grill and hood ornament is not based on operational considerations because, when installed, they cover the Volkswagen trunk.

objects. As such, they may be deserving of copyright or design patent protection. Their entitlement to trademark recognition, however, depends not on their eye appeal but on their characteristic of identifying the manufacturer of Rolls-Royce motor cars.

> The underlying purpose and the essence of patent rights are separate and distinct from those appertaining to trademarks. No right accruing from the one is dependent upon or conditioned by any right concomitant to the other. The longevity of the exclusivity of one is limited by law while the other may be extended in perpetuity.

*In re Mogen David Wine Corp.,* 328 F.2d 925, 929, 51 C.C.P.A. 1260, (1964).[8] See *In re Honeywell, Inc.,* 497 F.2d 1344 (Cust. & Pat.App. 1974). See also *Pachmayr Gun Works, Inc. v. Olin Mathieson Chemical Corp.,* 502 F.2d 802 (9th Cir. 1974).

It is tenuous at best to contend that the grill and hood statuette are the motivating factors in the purchase of a $50,000.00 automobile. They are valuable because, absent the various attempts to copy by the defendant and others, no other automobile in the world that carries these symbols is a Rolls-Royce.

Rolls-Royce does not contend that it should be permitted to have a trademark on its entire car or grills and ornaments as generic objects. But if these articles have the characteristic of secondary meaning, that is, identification of Rolls-Royce, then they are entitled to trademark protection.

The plaintiffs' cause of action is grounded in trademark infringement and unfair competition. There are two possible areas of trademark infringement, federal law, 15 U.S.C. §§ 1051 *et seq.,* and state law, Ga. Code Ann. §§ 106–101, *et seq.*

Federal registration for the Flying Lady was last effectuated in 1968 but no statutory registration was authorized for the Classic Grill. 15 U.S.C. § 1114(1) sets forth the relief for alleged infringement of a federally registered trademark.

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. . . .

It is undisputed that A & A had no license from Rolls-Royce to sell its kits or that Rolls-Royce owned the federal registration on the Flying Lady. *Cf. John R. Thompson v. Holloway,* 366 F.2d 108 (5th Cir. 1966); *Stembridge Products, Inc. v. Gay,* 335 F.Supp. 863 (M.D.Ga.1971). There is also no difficulty in finding the requisite use in commerce, 15 U.S.C. § 1127, which can be based on the defendant's extensive advertising. Compare Ga. Code Ann. § 106–101(g). See generally *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482 (5th Cir. 1970); Annot., 15 A.L.R. Fed. 368 (1973).

It should be noted that, although no federal registration was obtained for the Classic Grill, Georgia trademark registration was procured in 1975. The Georgia trademark statute, Ga. Code Ann. §§ 106–101, *et seq.,* provides for a similar civil action to remedy infringements, Ga. Code Ann.

---

8. The defendant fails to explain its assertion that these principles enunciated here are restricted to containers, notwithstanding attached correspondence between the defendant's counsel and staff members of the patent office.

§ 106–111, and is, both in structure and purpose, similar to its federal counterpart. In the absence of any authority interpreting the statute, federal law standards, as outlined by the cases, will be used to construe state law. See *Stembridge Products, Inc. v. Gay,* 335 F.Supp. 863 (M.D.Ga.1971). As a consequence, Rolls-Royce has available remedies to prohibit infringements of both the Flying Lady and the Classic Grill.[9]

■ The foundation of trademark infringement is a likelihood of confusion, mistake or deception. *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd.,* 398 F.2d 637 (5th Cir. 1968); *cf. E. I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.,* 393 F.Supp. 502 (E.D.N.Y.1975). Such confusion need not always be that of a potential purchaser but can exist where

> the defendant duplicated the protected trademarks and sold them to the public knowing that the public would identify them as being the [plaintiffs'] trademarks.

*Boston Prof. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc. supra,* at 1012.[10]

■ Although the likelihood of confusion is a question of fact, see *Hang Ten Int'l v. Sherry Mfg. Co., Inc.,* 498 F.2d 326 (5th Cir. 1974); *Sun-Maid Raisin Growers v. Sunaid Food Products, Inc.,* 356 F.2d 467 (5th Cir. 1966); *American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619 (5th Cir. 1963), the court, on a motion for summary judgment, is obligated to examine all the evidence and draw therefrom all reasonable inferences. See *Venetianaire Corp. v. A & P Import Co.,* 429 F.2d 1079 (2nd Cir. 1970); *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd., supra; Alladin Plastics, Inc. v. Jerrold Stephan Co.,* 362 F.2d 532 (9th Cir. 1966); *Volkswagenwerk Aktiengesellschaft v. Tatum,* 344 F.Supp. 235 (S.D.Fla.1972); *cf. Carling Brewing Co. v. Phillip Morris, Inc.,* 297 F.Supp. 1330 (N.D.Ga.1968). See also *Frostie Co. v. Dr. Pepper Co.,* 341 F.2d 363 (5th Cir. 1965).

This is not to say that summary judgment is necessarily appropriate in all suits for trademark infringement or even in the majority of them. In many cases, summary adjudication would be impermissible, either because of the complexity of the issues presented or because the evidence does not permit an easy resolution. *E. g., Chappell v. Goltsman,* 186 F.2d 215 (5th Cir. 1950). See 6 Moore's *Federal Practice,* ¶¶ 56.17[66], [71].

■ In this case, however, it is obvious that the defendant's kits infringe the statu-

---

9. The Patent Office approved the Classic Grill for federal registration on October 18, 1976, see 15 U.S.C. § 1062(a), and the mark is shortly scheduled for publication, at which time opposition to registration may be submitted. See 15 U.S.C. § 1063. If no objections are timely filed, then a certificate of formal registration may be issued. See 37 C.F.R. §§ 2.81, 2.151 (1976). The defendant argues that failure to obtain Georgia registration prior to 1975 shows Rolls-Royce' own awareness that neither the Classic Grill nor Flying Lady is a trademark. Registration, however, is merely declaratory of trademark rights. See *Womble v. Parker,* 208 Ga. 378, 67 S.E.2d 133 (1951). No further distinction is made between the substantive requirements for liability under the two statutory schemes.

10. In this connection, it is interesting to note that 15 U.S.C. § 1114(1)(a), as originally drafted required a finding of confusion or deception by "purchasers as to the source of origin of such goods or services." This clarifying language was eliminated in 1962 and the court now need find only use which is "likely to cause confusion, or to cause mistake, or to deceive." *Syntex Laboratories Inc. v. Norwich Pharmacal Co.,* 437 F.2d 566 (2nd Cir. 1971); *Continental Motors Corp. v. Continental Aviation Corp.,* 375 F.2d 857 (5th Cir. 1967). The Georgia statute, Ga. Code Ann. § 106–111(a), retains the "source of origin" test but does not restrict it to purchasers of goods or services. That an actual buyer of the defendant's kit might gather, from the markings and labelling on the package itself, that it was sold by A & A Fiberglass does not eliminate possible confusion as to the source of manufacture or affiliation of the manufacturer with Rolls-Royce. Cf. *Professional Golfers Ass'n v. Bankers Life & Cas. Co.,* 514 F.2d 665 (5th Cir. 1975). That a purchaser may distinguish the uninstalled parts from actual Rolls-Royce components does not preclude confusion of the public upon seeing the kit installed. It cannot be said that the deception requirement in the statutes is so narrow as to permit this type of confusion resulting when the kit is put to its intended use.

tory registrations for the Flying Lady and the Classic Grill. The A & A models are from appearance substantially identical to the genuine Rolls-Royce products, as admitted by the defendant. Since registration is conclusive of secondary meaning, that is, identification with Rolls-Royce, see 15 U.S.C. § 1115(b),[11] see *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44 (5th Cir. 1975), the likelihood of confusion is readily apparent. Cf. *National Ass'n v. United Bankers Life Ins. Co.*, 362 F.2d 374 (5th Cir. 1966).

Several elements support this judgment. At the outset, mere visual comparison between the Rolls-Royce and A & A products reveals their striking similarity. Second, under the rationale of *Boston Hockey,* the court need not invariably find confusion or deception on the part of potential purchasers but may look as well to public identification of the symbols. It is evident, from the defendant's advertising alone, that its kits were selling and were designed to sell primarily, if not exclusively, because of public recognition of Rolls-Royce.

Further, there is no need to show actual deception or confusion but merely the likelihood thereof and, thus, testimony of witnesses to the effect that they were in fact misled is not an invariable requirement. Finally, it must not be forgotten that the parties here have produced a wealth of information in the form of documents and other evidence to support their respective positions. Denial of summary judgment in this instance, where the record is well-developed and the alternative is a non-jury trial in which the court is required to draw the same inferences from the same evidence, would be unfair to the litigants and waste judicial resources.

■ The existence or absence of direct competition between the plaintiffs and the defendant, cf. *Sun-Maid Raisin Growers v. Sunaid Food Products, Inc., supra,* and the possibility of purchaser confusion, see *Professional Golfers Ass'n v. Banker's Life & Cas. Co.,* 514 F.2d 665 (5th Cir. 1975); *Turner v. HMH Pub. Co., Inc.,* 380 F.2d 224 (5th Cir. 1967), are only factors that bear on the likelihood of confusion. It is enough that a motivating reason behind the purchase of the infringing article is its association with the trademark owner. See *Boston Prof. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., supra.* The "elegance" of the "Elegant Beetle" is derived from its association with Rolls-Royce, not from any inherent feature of the Flying Lady or the Classic Grill. Cf. *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir. 1965).

The defendant asserts a number of defenses which it contends defeats in whole or in part the plaintiffs' right to recovery. First, A & A seeks cancellation of Rolls-Royce'.state and federal registrations because of fraudulent procurement.[12]

■ There is no evidence that Rolls-Royce knowingly misrepresented any information in its applications for registration, see *Acme Valve & Fittings Co. v. Wayne,* 386 F.Supp. 1162 (S.D.Tex.1974), or that it

11. Under federal law, once a registered mark has become "incontestable" within the meaning of 15 U.S.C. § 1065, it can be attacked only on the grounds enumerated in 15 U.S.C. § 1115. To the extent, therefore, that the defendant is unable to establish an infirmity in the plaintiffs' registration, the mark is incontestable. State law has no like provision. It does provide for recovery based on registration alone, see Ga. Code Ann. §§ 106–111, 112, and it would appear that the defendant would have the same burden of proving the registration to be invalid and subject to cancellation under the language of Ga. Code Ann. § 106–108.

12. The federal registration on the Flying Lady is "incontestable" within the meaning of 15 U.S.C. § 1065. As a result, trademark infringement of the object can be defended only for the reasons enumerated in subsection (b). One of the available defenses is fraud in obtaining the registration, 15 U.S.C. § 1115(b)(1), which is distinct from mere failure to comply with the rules of the Patent Office, 37 C.F.R. §§ 2.51, 2.52. This latter contention, therefore, need not be considered. See note 11, supra.

was under any affirmative duty to disclose information not contained therein. See *Wurzburger Hofbrau Aktiengesellschaft v. Schoenling Brewing Co., Inc.,* 331 F.Supp. 497 (S.D. Ohio 1971). The standard of proof here requires at least some evidence, first, to overcome a presumption of a proper registration, see *L'il' Red Barn, Inc. v. Red Barn System, Inc.,* 322 F.Supp. 98 (N.D.Ind.1970), and, second, to demonstrate the materiality of the mistaken or omitted fact to the issuance of the registration. See *Norton v. Curtiss,* 433 F.2d 779, 57 CCPA 1384 (1970). No showing whatsoever has been made by the defendant to rebut the plaintiffs' proffer[13] and, as a result, the defense of improper registration lacks merit.

■ The defendant also relies on Rolls-Royce' purported abandonment of trademark rights to both the Flying Lady and Classic Grill. Abandonment is a good defense when there is a loss of distinctiveness through non-use. A & A contends that the extensive manufacture of the Lincoln Continental Mark IV, with a similar grill, supports its claim of abandonment.

It must be recognized that Ford Motor Company has made no attempt to imitate the Flying Lady statuette. As for the grill, there may be a violation to the extent that the prospect of deception between it and the Rolls-Royce version is apparent. The defendant has produced no evidence beyond its invitation for mere visual comparison to support this claim and the differences between the two grills are sufficiently obvious to preclude confusion on the one hand and abandonment on the other. Moreover, the mere fact that others may have intruded on a trademark, without more, does not necessarily preclude the plaintiffs' right to recovery. See *Tisch Hotels, Inc. v. Americana Inn, Inc., supra; James Burrough Ltd. v. Lesher,* 309 F.Supp. 1154 (S.D.Ind.1969).

■ More pertinent is the allegation that the plaintiffs' delay in asserting their claims against A & A constitutes laches. This defense prevails when the delay in protesting the defendant's activities is so substantial as to amount to a virtual abandonment of the right. As the defendant admits, however, laches goes only to the propriety of damages, does not bar injunctive relief against future infringements and is more properly addressed at a later point. See *Blue Bell, Inc. v. Ruesman,* 335 F.Supp. 236 (N.D.Ga.1971). See also Annot., 14 A.L.R. Fed. 342 (1973).

■ The contacts between Rolls-Royce and Volkswagen do not constitute a secondary boycott or lay the foundation for a violation of the antitrust laws. There is no evidence that Rolls-Royce directly contacted any dealer of Volkswagen automobiles.

---

**13.** The defendant alleges numerous errors in registration, including misrepresentation of the articles' functionality and availability of patent, uses of the objects by others and the capacity of the individual who attested to the applications. The relationship between patent and copyright protection, on the one hand, and trademark protection, on the other, has already been resolved in Rolls-Royce' favor. There is no evidence of prior use of the trademarks by any other individual and subsequent use, since it would not have prevented the issuance of registration, is irrelevant. Finally, the plaintiffs have sworn to the fact that the individual who signed the applications for registration as "Patents Manager [of] Rolls-Royce Motors, Inc.," actually held such position.

Although similar allegations have been directed specifically to the Georgia registrations, the defendant admitted lack of any additional evidence in support. Additionally, however, the defendant contends that the dates of first use in the applications are inaccurate and that there has been no compliance with the requirements of Ga. Code Ann. § 106–103.

The defendant has made no showing that registration was improperly granted. While a ground for cancellation is improper issuance, Ga. Code Ann. §§ 106–108(4)(c), (f), the defendant admits its lack of evidence that the dates of use were inaccurate. Moreover, there has been no further showing that registration was unlawful and a duly certified statement of registration issued by the Secretary of State is presumptive of its validity. See Ga. Code Ann. § 106–104.

Since the plaintiffs rightfully believed that the sales of the defendant and others disregarded their trademarks, they had every right to attempt to interfere through contact with both the infringer and his customers. See *Lucien LeLong, Inc. v. Dana Perfumes, Inc.,* 138 F.Supp. 575 (N.D.Ill.1955); *cf. Deltec, Inc. v. Laster,* 326 F.2d 443 (6th Cir. 1964). See also *Standard Oil Co. v. Humble Oil & Refining Co.,* 363 F.2d 945 (5th Cir. 1966). Rolls-Royce' failure to take corrective action may otherwise have amounted to an abandonment of its trademark rights.

No other violations of the antitrust laws have been shown. Although A & A claims a monopolization of Rolls-Royce' replacement parts and price-fixing, they are not a complete defense to Rolls-Royce' prayers for relief. In *Coca-Cola Co. v. Howard Johnson Co.,* 386 F.Supp. 330 (N.D.Ga.1974), Judge Hill declined to rule that an antitrust defense, asserted under the doctrine of "unclean hands," is never available in a trademark infringement case but held that "[t]here must be some logical connection between the right plaintiff asserts and the activity constituting unclean hands." *Id.* at 337. Under this test, based on judicial reluctance to permit every case for trademark infringement to expand into a major antitrust action, the antitrust defenses must fall.

■ There is a separate and comprehensive ground for relief, unfair competition under federal law. Section 43(a) of the Lanham Act provides a right of action for false designation of goods.

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

The gist of this cause of action is the representation, by the use of marks associated with another company, that the goods which incorporate them are emanating from or are sponsored by or endorsed by that company. See *Joshua Meier Co., Inc. v. Albany Novelty Mfg. Co.,* 236 F.2d 144 (2nd Cir. 1956). A purchaser need not be deceived into believing that he is purchasing the genuine article.[14] The "likelihood of confusion" test under federal trademark law is the same for unfair competition under 15 U.S.C. § 1125(a). See *Boston Prof. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., supra.*

Section 1125 also requires satisfaction of an additional element, proof that the mark is associated in the public mind with a certain source. See *Kellogg Co. v. National Biscuit Co., supra.* This is also a question of fact. See *Aloe Creme Laboratories, Inc. v. Milsan, Inc.,* 423 F.2d 845 (5th Cir. 1970); *cf. Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794 (9th Cir. 1970); *Exquisite Form Industries, Inc. v. Exquisite Fabrics,* 378 F.Supp. 403 (S.D.N.Y.1974). Although the plaintiffs' right to recovery under this theory was recently recognized by the United States District Court for the Southern District of New York in *Rolls-Royce Motors, Ltd. v. Custom Cloud Motors, Inc.,* Civ. No. 76–479 (S.D.N.Y. March 22,

---

**14.** See note 10, supra. 15 U.S.C. § 1125 did not, at inception, contain such a requirement.

1976), where the court enjoined further sales of a customizing kit designed for Chevrolet Monte Carlo automobiles, this case alone does not support the grant of judgment in this instance.

In recognition that they must establish a secondary meaning for the Classic Grill and Flying Lady in order to recover under Section 1125, the plaintiffs have produced a flood of documentary evidence and argument directed to this point. Without attempting to review in detail all the evidence submitted by Rolls-Royce, a brief review of the facts is required.

Both the Flying Lady and Classic Grill have been used as the distinguishing feature of the Rolls-Royce automobile for over fifty years. Advertising of the motor car, both in dollar amount and geographical distribution, has been significant and unsolicited advertising in the form of newspaper and magazine articles further stresses the distinctiveness of the grill and hood statuette. Numerous books have been written about the company and its products. Affidavits from various individuals support the argument that the Rolls-Royce automobile is instantly recognizable by the Classic Grill and Flying Lady.[15] Equally as important, the stress of the defendant's advertising is the similarity between the modified Volkswagen and the Rolls-Royce.

By contrast, A & A does not attempt to rebut the plaintiffs' proof but urges instead that the Classic Grill has no secondary meaning absent the "Rolls-RR-Royce" badge which it has not duplicated. This argument does not require a different determination. The issue to be resolved is not whether the "Rolls-RR-Royce" emblem has a secondary meaning, but, rather, whether

the appearance of the grill, square-framed, vertically shuttered, and chrome or silver-plated, identifies Rolls-Royce. It is the appearance of the Classic Grill and the similarity of the defendant's imitation, as opposed to the minor details which separate the two, that form the basis of Section 1125 liability.

The evidence as a whole compels the conclusion that the Flying Lady and Classic Grill do indeed identify Rolls-Royce. As a consequence, liability under 15 U.S.C. § 1125(a) has been established as a matter of law.

It need not be decided whether the defendant's kits constitute violations of common law trademark or unfair competition because consideration to this point clearly demonstrates the plaintiffs' entitlement to relief. Additionally, there is no necessity to reach the defendant's alleged culpability for dilution of trademark, Ga. Code Ann. § 106–115, or fraudulent misappropriation. Ga. Code Ann. § 37–712. Each would suffice merely to reinforce the right to recover. The plaintiffs' cause of action for deceptive trade practices, however, is not just duplicative of its other claims.

The Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 106–701, *et seq.,* authorizes injunctive relief, costs and attorneys' fees where the defendant

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, con-

15. As mentioned earlier, the plaintiffs also manufacture Bentley automobiles which, until 1972, were also available in the United States through Rolls-Royce dealers. They are substantially identical to the Rolls-Royce except for grill, hood ornament and identifying markings. That Rolls-Royce has intentionally developed the Classic Grill and Flying Lady as trademarks is sustained by the existence of the Bentley motor car and emphasized by its advertising. "The Bentley is made by Rolls-Royce. Except for the radiator shells, they are identical motor cars, manufactured by the same engineers in the same works. The Bentley costs $300 less, because its radiator is simpler to make. People who feel diffident about driving a Rolls-Royce can buy a Bentley."

nection, or association with, or certification by, another;

. . . . .

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Ga. Code Ann. § 106–702(a). Proof of actual competition between the parties is not required. Ga. Code Ann. § 106–702(b). The crux of a complaint based on this statute is the likelihood of confusion between goods. See *Baker Realty Co. v. Baker,* 228 Ga. 766, 187 S.E.2d 850 (1972). Since that ruling has been made favorably to the plaintiffs, then liability under this state statute is established as well. *Cf. Stembridge Products, Inc. v. Gay, supra.*

In summary, the plaintiffs are entitled to relief on Count One for infringement of the federally registered Flying Lady, Count Four for infringement of the Flying Lady and the Classic Grill as Georgia-registered trademarks, Count Three for false designation of goods under 15 U.S.C. § 1125(a) and Count Six for deceptive trade practices. Liability on Counts Two and Five, alleging common law trademark infringement and unfair competition and trademark dilution is not decided by this order.

The principal element of relief in an action of this nature is an injunction prohibiting the defendant from continued infringements. Federal and state trademark law, 15 U.S.C. § 1116; Ga. Code Ann. § 106–112, federal unfair competition, see *Boston Prof. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., supra,* and the state deceptive practices statute, Ga. Code Ann. § 106–703(a), all provide for equitable relief. Since the harm suffered here by Rolls-Royce is confusion as to sponsorship or endorsement of the defendant's kits by the public, only an injunction can insure the absence of any future damage. *Cf. Carling Brewing Co. v. Phillip Morris, Inc., supra.* See also *Blue Bell, Inc. v. Ruesman, supra.*

The difficulty in fashioning an appropriate remedy is not that of a permanent injunction, but rather in assessing the plaintiffs' right to an accounting of profits and damages for the defendant's activities. 15 U.S.C. § 1117 provides for damages and an accounting of profits.

[T]he plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

. . . .

The Georgia trademark statute, Ga. Code Ann. § 106–112, also permits an award of the defendant's profits and the plaintiffs' actual damages.[16]

Rolls-Royce strenuously insists that the evidence requires the award of full monetary relief. It contends that the actions of A & A in continuing its infringements constitute bad faith as a matter of law.

This resolution is not so easily made. While it is apparent that the defendant's actions are "wilful" in the sense that it has not voluntarily ceased its marketing of the style-change kits, it is not at all evident

---

**16.** As stated, the Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 106–701, et seq., restricts relief to an injunction.

that it was motivated by bad faith. Furthermore, it is incumbent upon the plaintiffs to prove their monetary damage, *cf. Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., Inc.,* 349 F.2d 389 (2nd Cir. 1965); *McIlhenny Co. v. Bulliard,* 33 F.2d 978 (W.D.La.1928), and this they have not attempted to do.

The plaintiffs first became aware of the defendant's activities in September, 1972.[17] Rolls-Royce contacted the defendant by letter in January, 1973 but did not assert trademark rights. The plaintiffs point out, not unreasonably, that when their letter was ignored, they continued to monitor the defendant's sales to determine if voluntary cessation would, nonetheless, be forthcoming.

In the meantime, Rolls-Royce attempted to obtain the cooperation of Volkswagen to discourage its distributors from purchasing the style kits. The defendant insists, without any factual foundation in the record, that Rolls-Royce' efforts in this regard succeeded in eliminating a large share of the market for the kits. It follows logically, at least, that the defendant was aware of Rolls-Royce' continued attempts to prevent further infringements and, when it continued to manufacture and sell its product, it was taking a calculated risk. The defendant admits awareness of Rolls-Royce efforts to stop at least one company from duplicating the Flying Lady statuette and, as a result, A & A was forced to find another supplier.[18] Although the defendant's justification that it did not believe Rolls-Royce would pursue its course of action, is unavailing, the manner of Rolls-Royce' initial contact may bear somewhat in assessing

damages. Equally as important, the defendant's claim that it believed Rolls-Royce had no legally enforceable right to prevent its conduct may relate to the propriety of full relief.

Both parties have directed their motions for summary judgment primarily to liability and reserved the question of relief for trial. The insufficiency of the record at this stage[19] and the necessity of a full factual inquiry into the circumstances surrounding not only the plaintiffs' damages but also the defendant's reasons in continuing its activities despite protest from Rolls-Royce mandate a reservation of the type and scope of remedy.

The plaintiffs alone moved for summary judgment on the issues raised by counterclaim. The defendant failed to address this portion of Rolls-Royce' motion and, to this extent, it is considered as unopposed. Rule 91.2, Local Rules of the United States District Court for the Northern District of Georgia.

The first counterclaim seeks cancellation of Rolls-Royce' federal and state trademark registrations and the second counterclaim is for damages for alleged fraud in registration. It already having been determined that the trademarks are valid, the first counterclaim must fall.

■ The second counterclaim for damages is also without merit for precisely the same reasons. There is an additional ground for dismissal of this count. There is no basis on which to find a causal relationship between the plaintiffs' alleged fraud in

---

17. Rolls-Royce is adamant in disclaiming knowledge of the defendant's conduct until September, 1972. The defendant calls attention to the March, 1972 New York Auto Show when both Rolls-Royce and A & A, through Fulton Engineering, had displays and the purported infringement by other companies with whom A & A had some business relationship. For the purpose of the present discussion the defendant agreed to assume that notice was first received in September, 1972.

18. Gem Manufacturing Company was the defendant's original supplier of hood ornaments but, after protest from Rolls-Royce, it terminated production either in 1973 or early 1974. The defendant now states that its new supplier is Ghia Products of Brooklyn, New York.

19. 15 U.S.C. § 1117 and Ga. Code Ann. § 106–112 contemplate actual submission of figures before an accounting or an award of damages can be made.

registering its trademarks and damage to the defendant. Absent this relationship between liability and damage, the counterclaim need not be considered.[20] *Alfred Dunhill of London, Inc. v. Kasser Distillers Prod. Corp.*, 350 F.Supp. 1341 (E.D.Pa.1972).

 The third counterclaim alleges a violation of the antitrust laws. It is based on (1) a purported trade boycott because of Rolls-Royce' contacts with Volkswagen, (2) monopolization of replacement Rolls-Royce parts and price and territorial discrimination in the replacement parts market, (3) a conspiracy to discriminate against other potential suppliers of such replacement parts. Liability is predicated on the Sherman Anti-Trust Act, 15 U.S.C. § 1, and the Clayton Anti-Trust Act, 15 U.S.C. §§ 13a, 14.

Since the plaintiffs' contacts with Volkswagen were undertaken solely in exercise of their right to protect their trademarks from infringement, they do not amount to an antitrust violation.[21] In addition, any price restrictions and discriminatory territorial availability of Rolls-Royce replacement parts must be challenged by someone who is directly and adversely affected by such policies and practices. See *Coca-Cola Co. v. Howard Johnson Co., supra.* In this instance, A & A is not a dealer in Rolls-Royce motor cars or replacement parts and thus has no standing to pursue this cause of action. See *Alexander v. Texas Co.*, 149 F.Supp. 37 (W.D.La.1957). See also *Productive Inventions, Inc. v. Trico Products Corp.*, 224 F.2d 678 (2nd Cir. 1955).

The defendant's failure to furnish a brief directed to its antitrust counterclaim further deprives the court of any information on which any other potential violations of

the law could be predicated. The third counterclaim must, therefore, be dismissed.

 The fourth counterclaim is an action for unfair competition based, in essence, on the defendant's assumption that Rolls-Royce instituted this suit in bad faith. The evidence demonstrates the contrary and any allegations of bad faith arising out of the commencement of this litigation must fail. See *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705 (7th Cir. 1972).

Accordingly, the defendant's motion for partial summary judgment is denied and the plaintiffs' motion for summary judgment is granted in part on Counts One, Three, Four and Six of the complaint and on the first, second, third and fourth counterclaims.

So ordered this the 29 day of October, 1976.

## ORDER OF FINAL JUDGMENT

In its order entered in this action on October 29, 1976, this Court made findings of fact and conclusions of law and granted Plaintiffs' Motion for Partial Summary Judgment on the issue of liability and entitlement to injunctive relief. Only the question of whether the remedy should also include an accounting of profits and damages for Defendant's activities was reserved for later determination.

The action is presently before the Court on Plaintiffs' Motion for entry of a permanent injunction. It now appears that all matters which are in dispute between the parties have been finally determined by the previous ruling on Plaintiffs' Motions for Partial Summary Judgment. Plaintiffs have by separate motion, granted by this

---

**20.** The applicable statutes, 15 U.S.C. § 1120, Ga. Code Ann. § 106–110, permit a civil action for damages only for one injured by the alleged fraud. No damage results because of the plaintiffs' entitlement under 15 U.S.C. § 1125 and Ga. Code Ann. §§ 106–111, 703.

**21.** The defendant originally urged that under authority of *Fashion Originators' Guild v. FTC*,

312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941), Rolls-Royce' actions constitute a per se violation of the antitrust laws. Since that case did not involve trademarks, it does not either in language or policy considerations support the defendant's claim.

Court, dismissed their remaining claims for accounting of profits, damages and attorneys fees, leaving no further issues remaining for final determination. Therefore, Plaintiffs are entitled to the relief requested, and, in accordance with and for the reasons assigned by the Court's Order of October 29, 1976, the following Order is hereby entered and issued.

It is hereby ORDERED, ADJUDGED and DECREED as follows:

1. This Court has jurisdiction over the subject matter and parties.

2. The trademarks and designations of origin identified below are valid and subsisting and owned by the parties respectively indicated:

(a) The "Flying Lady" three-dimensional trademark and designation of origin which is depicted in Exhibit "A", owned by Rolls-Royce Motors, Inc.

(b) The "Classic Grill" three-dimensional trademark and designation of origin which is depicted in Exhibit "B", owned by Rolls-Royce Motors Limited.

3. Rolls-Royce Motors, Inc., is the owner of U.S. Registration No. 850,902 for the three-dimensional "Flying Lady" trademark, which registration is valid and incontestable in law and is in full force and effect.

4. Rolls-Royce Motors, Inc. is the owner of Georgia trademark registrations for the Flying Lady and Classic Grill three-dimensional trademarks, specifically Certificates of Registration Nos. T–3131 and T–3132, respectively, both of which are valid and subsisting.

5. Defendant has by its acts heretofore infringed the rights of Plaintiffs in each of their respective trademarks and designations of origin set forth in the three paragraphs immediately preceding, both under the United States Trademark Act of 1946, as amended, and the trademark laws of the State of Georgia, by using colorable imitations of Plaintiffs' "Flying Lady" and "Classic Grill" trademarks in connection with the advertising, distribution and sale of its products. Such use by the Defendant creates the likelihood of confusion, mistake and deception, and, in addition, constitutes false designation of goods in violation of 15 U.S.C. Sec. 1125(a) and deceptive trade practices in violation of Georgia Code Annotated, Sec. 106–703.

6. The Defendant, its officers, agents, servants, employees, attorneys, and all other persons otherwise acting in concert, participation or privity with Defendant, and their successors and assigns, are hereby permanently and perpetually restrained and enjoined from doing, abiding, causing or abetting, directly or indirectly, in the United States or elsewhere in the world, any of the following:

(a) Infringing either of the Plaintiffs' trademarks and designations of origin listed in paragraphs 2–4 above;

(b) using any reproduction, counterfeit, copy or colorable imitation of the trademarks and designations of origin listed in paragraphs 2–4 above, or any of them, including the reproductions thereof heretofore used by Defendant, in connection with the manufacture, sale, offering for sale, distribution, advertising, or labeling of any goods or services, including without limiting the foregoing, use on or in connection with, or in any manner related to, automobiles, automobile parts, kits for modification or conversion of automobiles or any related goods or services, or any other use tending falsely to describe or represent or which is likely to cause confusion, to cause mistake or to deceive;

(c) representing or suggesting in any way that Defendant's goods and services have been approved by, authorized by, or are in any way associated with Plaintiffs, or either of them;

(d) engaging in any acts or activities calculated to trade upon the trademarks, reputation or good will of Plaintiffs, or in any manner to falsely designate the goods or services of Defendant as originating with,

being associated with, sponsored or approved by Plaintiffs, or either of them;

(e) using in the sale, offering for sale, promotion, advertising, marketing or distribution of its products or services, or on any package, cartons, labels, display cards, wrappers, advertising matter or the like whatsoever, the words Rolls-Royce or any simulation, colorable imitation or derivative of the trademarks and designations of origin listed above in any such manner so as to cause confusion or to be likely to cause confusion or to deceive the public into the belief that the goods and services sold by Defendant are manufactured, sold, authorized or sponsored by the Plaintiffs, or either of them, or that the Defendant and Plaintiffs are affiliated or in any manner connected each with the other.

7. Defendant is hereby ordered to deliver up for destruction any and all hood ornaments, front grill shells, labels, packages, cartons, display pieces, wrappers, advertising materials, letters, billheads, and any matter of description of any nature whatsoever in its possession, or which can be recalled, bearing the words Rolls-Royce or any copy, simulation, colorable imitation, or representation of the trademarks and designations of origin listed above, or any of them, within ten (10) days of entry of this Order.

8. Judgment is entered on the merits in Plaintiffs' favor and against Defendant on Count One for infringement of the federally registered "Flying Lady" trademark, Count Three for false designation of goods under 15 U.S.C. § 1125(a), Count Four for infringement of the "Flying Lady" and "Classic Grill" as Georgia registered trademarks, and Count Six for deceptive trade practices. Liability on Counts Two and Five, for common law trademark infringement and unfair competition and for trademark dilution are not decided by this Order, since they appear to be cumulative in nature and the remedy here provided is the same as sought in those Counts.

9. Judgment is entered on the merits in Plaintiffs' favor and against Defendant on the First, Second, Third and Fourth counterclaims for cancellation of Plaintiffs' registrations, damages for fraud in registration, antitrust violations and unfair competition.

10. Plaintiffs' request for an accounting, damages and attorneys' fees is dismissed without prejudice.

11. The costs of this action shall be taxed upon Defendant.

SO ORDERED this 28th day of February, 1977.

s/ Albert J. Henderson
Albert J. Henderson, Jr.
Judge, United States District Court for the Northern District of Georgia

Exhibit "A" to follow

704

THF ROLLS-ROYCE MASCOT, generally known as the "Flying Lady," was created in 1910 by a famous sculptor of the time, Charles Sykes. Its real name, "The Spirit of Ecstasy," was chosen after the sculptor had ridden in a Silver Ghost. Today the mascot is a piece of precision engineering cast by the "lost wax" process, a manufacturing technique going back to Babylonian days which is used when intricate detail is required.

EXHIBIT "A"—Continued

Exhibit "B" to follow

EXHIBIT "B"

