**SYNTEX LABORATORIES, INC.,**
**Plaintiff-Appellee,**

v.

**The NORWICH PHARMACAL COM-**
**PANY, Defendant-Appellant.**

**No. 481, Docket 35398.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1971.

Decided March 2, 1971.

Alfred T. Lee, New York City (Weil, Lee & Bergin, New York City, on the brief), for appellee.

Bradford S. Allen, Norwich, N. Y., for appellant.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

In this trademark infringement action under the Federal Trademark Act of 1946 (Lanham Act), Syntex Laboratories, Inc., the owner of the registered mark "Vagitrol" for a vaginal cream product, brought suit in the Southern District of New York to prevent Norwich Pharmacal Company from using its unregistered mark "Vagestrol" on a vaginal suppository product. By order dated July 17, 1970, Judge Mansfield granted Syntex's motion for a preliminary injunction and enjoined Norwich *pendente lite* from using the term "Vagestrol" in any further advertising or sale of a medicinal vaginal suppository. Norwich appeals. For the reasons stated in Judge Mansfield's thorough opinion, reported at 315 F.Supp. 45 (S. D.N.Y.1970), we affirm.

The only point that we need to discuss here is Norwich's contention that Judge Mansfield applied a more stringent standard of trademark infringement to these prescription pharmaceutical prod-

ucts than the courts have applied to products in general, and that that special more stringent standard is unwarranted in light of the precedents. According to Norwich, the separate standard which Judge Mansfield incorrectly applied here has two aspects: (1) it looks to confusion of the products themselves by physicians and pharmacists, instead of to confusion among ordinary prudent purchasers as to the source of origin—which, Norwich says, is the correct standard of trademark infringement; and (2) it is more stringent, unduly so, on the issue of the likelihood of confusion itself, for Judge Mansfield stated that "[t]he issue is not whether plaintiff's and defendant's prescription drugs *can* be told apart, or even whether they usually would be told apart, but whether there is a likelihood that, because of the similarity of the names attached to them, they might not be told apart." 315 F.Supp. at 52. This latter standard was applied in Morgenstern Chemical Co. v. G. D. Searle & Co., 253 F.2d 390 (3rd Cir.), cert. denied, 358 U. S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958).

While it is not entirely clear that Judge Mansfield did apply such a separate standard, we hold that even if he did, that standard is supportable and in accord with public policy.

■ Judge Mansfield did look primarily to product confusion among physicians and pharmacists, rather than to source-of-origin confusion among purchasers. But contrary to Norwich's assertions, that standard is quite correct. Although Norwich cites several cases for the proposition that confusion among

purchasers as to source of origin is the "keystone" of a trademark infringement action under the Lanham Act [e. g., Avon Shoe Co., Inc. et al. v. David Crystal, Inc. et al., 279 F.2d 607 (2d Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); B & L Sales Associates v. H. Daroff & Sons, Inc., 421 F.2d 352 (2d Cir.), cert. denied, 398 U. S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970)], the Act itself does not contain such a limitation.

■ In its original form, the federal infringement section required a showing that the alleged infringer's use "is likely to cause confusion, or to cause mistake, or to deceive *purchasers as to the source of origin of such goods or services.*" 15 U.S.C. § 1114(1). (Emphasis supplied.) In amending that section in 1962, Congress eliminated the italicized, qualifying language, thereby evincing a clear purpose to outlaw the use of trademarks which are likely to cause confusion, mistake, or deception of any kind, not merely of purchasers nor simply as to source of origin.

Moreover, the cases cited by Norwich never dealt with the problem raised here, for the only relevant confusion there was source-of-origin confusion among purchasers. Hence their statements about what is the "keystone" of a trademark infringement action can be seen as focusing on the fact of likelihood of confusion, not on the fact that the confusion went to source of origin. In a case such as the one at bar, where *product* confusion could have dire effects on public health,[1] looking to such confusion,

---

1. Syntex's "Vagitrol" product is a cream, made with sulfanilamide and intended for the treatment of bacterial vaginitis. Norwich's "Vagestrol" product is a suppository made with diethylstilbestrol estrogen, a female hormone, and intended for the treatment of atrophic vaginitis. The potential physical harm to consumers which could result from confusion between the two products is well stated in Judge Mansfield's opinion:

"As defendant's own promotional material indicates, because estrogens can aggravate cancerous conditions in cer-

tain individuals, Vagestrol is contraindicated for individuals with either a personal or family history of breast or genital malignancy. Similarly the sulfanilamide ingredient of Vagitrol can produce allergic reactions in those sensitive to sulfa drugs. In addition the significance of side effects such as skin rash (indicative of an underlying systemic toxicity) may be ignored by the physician and by the patient who has not been warned to watch for it." 315 F.Supp. at 53.

in addition to source-of-origin confusion, in determining whether there has been trademark infringement, is entirely in accord with public policy, as well as with the Lanham Act.

With respect to the question whether the district court's standard of the likelihood of confusion itself was more stringent here than in ordinary cases, it is not so clear that Judge Mansfield applied a separate standard. He did say that because of the public interest here and "with the consequences of confusion so much more serious, relief should be granted upon lesser proof of confusing similarity in a prescription drug case than in other areas of infringement litigation," 315 F.Supp. at 53; and he did specifically approve the *Morgenstern* rationale.

But the district judge also found much evidence of a substantial likelihood of confusion under the normal test. He found the marks to be strikingly similar, possessing a "strong visual and phonetic resemblance" and he went on to say that the products are "almost identically named." 315 F.Supp. at 51. He found, too, that both products are intended for intravaginal use in the treatment of closely parallel and medically related conditions and that the products "are likely to be closely associated in the minds of those who prescribe and dispense them." 315 F.Supp. at 50. He also focused on the fact that the two products are likely to be confused if the prescriptions are written, because of physicians' illegible style, or if they are telephoned, because of the phonetic similarities. These facts certainly indicate a substantial likelihood of confusion—the normal test. Thus, it could be that Judge Mansfield's reference to *Morgenstern* and to the lesser proof needed here was merely a further or alternative justification for his decision. In any event, his findings are fully supported for the reasons he states and in light of the Patent Office's refusal to register "Vagestrol" because of its similarity to "Vagitrol"—a factor which, while not conclusive, is entitled to great weight. W. E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir., 1970).

On the other hand, Judge Mansfield did seem to make a distinction between this case and normal cases and hence may have found a likelihood of confusion here *only* upon the lesser proof and *only* under *Morgenstern*. But even if he did, his conclusions are correct, for the *Morgenstern* rationale is consonant with public policy. Confusion between plaintiff's and defendant's marks here could result in physical harm to the consuming public, whether through failure to receive effective medication or through adverse reaction to inadvertently prescribed or dispensed drugs.[2] Hence a stricter standard in order to prevent likelihood of confusion seems desirable.

Norwich argues that in Upjohn Co. v. Schwartz, 246 F.2d 254 (2d Cir. 1957), we applied the ordinary standard of trademark infringement to pharmaceutical products and that consequently we must do the same in the instant case. But, as Judge Mansfield points out, *Upjohn* is not in point here. It involved cough medicines that could be dispensed without a prescription; and in any event both cough medicines there were made from the same formula with the same ingredients, so that no physical harm could result from confusion between the two. The ordinary standard was properly applied there since the only possible harm was economic loss to the plaintiff; it did not involve the public policy considerations of potential physical harm that are involved here. Thus, even if Judge Mansfield applied a separate and stricter standard, it was entirely appropriate to do so on this record.

Affirmed.

---

2. See note 1 *supra*.