UNITED STATES of America, Plaintiff,

v.

Rudolfo GONZALEZ, Maria Elena Miro, Cesar Montes De Oche, Tom Lee, Luis Triana, Alfonso Caliviero, Miguel Hernandez and Rolando Hernandez, Defendants.

No. 85–721–CR–SPELLMAN.

United States District Court, S.D. Florida, Miami Division.

March 12, 1986.

Judy Hunt, Miami, Fla., for plaintiff.

Mark Skipper, John George, Ft. Lauderdale, Fla., Robert Stone, Hollywood, Fla., Stuart Abrams, Miami, Fla., Anthony Dieguez, Hialeah, Fla., Melvin Schlesser, Chris Cloney, Ft. Lauderdale, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER AFFIRMING ORDER OF FEBRUARY 12, 1986 DENYING THE MOTION TO DISMISS THE INDICTMENT

SPELLMAN, District Judge.

This CAUSE comes before the Court on the Defendants' Motion for this Court to Reconsider its Order Denying the Motion to Dismiss the Indictment entered on February 12, 1986. The Defendants, Rudolfo Gonzales and Rolondo Hernandez, filed a Motion to Dismiss the Indictment on the grounds that the actions of the Defendants did not constitute a violation of 18 U.S.C. § 2320. The Defendants contended that because the products were of such obvious inferior quality, they are not "counterfeit" within the meaning of the statute and that the requirement that there be an intent to deceive or to defraud the purchaser of the goods is lacking. This Court issued an Order Denying the Motion to Dismiss the Indictment. The Defendants herein have requested that this Court Reconsider said Order in light of an Order of Dismissal entered on February 10, 1986 by the Honorable Norman C. Roettger. After having reviewed the file, the Motion, the Memoranda of law, and Judge Roettger's Order of Dismissal, it is hereby,

ORDERED AND ADJUDGED that this Court's Order of February 12, 1986 Denying the Motion to Dismiss the Indictment by the Defendants is AFFIRMED.

The Defendants refer to the watches at issue as "replicas" of the more expensive products. They claim, however, that the products are of such obvious inferior quality that they are not "counterfeits" within the meaning of the Statute. Title 18, United States Code, Section 2320 provides:

(a) Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services [shall be guilty of an offense against the United States].

The Statute defines "counterfeit mark" as:

(A) a spurious mark—

(i) that is used in connection with trafficking in goods or services;

(ii) that is identified with, or substantially indistinguishable from a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

(iii) the use of which is likely to cause confusion, to cause mistake, or to deceive.

In the Order of February 10, 1986, Judge Roettger found that "goods allegedly transferred—two replica or fake Rolex watches—were not, in fact, counterfeit under 18 U.S.C. § 2320(d)(1) in that the use of the goods was not likely to cause confusion, mistake, or to deceive." Judge Roettger further explained:

The Court finds it unlikely—to the point of absurdity—that the purchaser of a replica or fake Rolex watch that sold for

$27.00 would be confused, mistaken or deceived into thinking that he was purchasing a genuine Rolex watch, which may sell for approximately $1,000 to $8,000. Although the purchaser of the replica Rolex may be attracted by the possibility of confusing and impressing others, it is unlikely that the purchaser himself would be confused, mistaken or deceived.

*United States v. John Torkington*, Case No. 85–6168–CR–ROETTGER. This Court declines to accept the position espoused by Judge Roettger's Order for two reasons.

■ First, this Court adheres to its initial determination that the Defendant's contention that the goods constitute "replicas" rather than "counterfeits" should be established at trial before a jury. Although this Court will not endeavor to resolve the question of whether Congress intended the case law regarding the definition of "counterfeit" in the Lanham Act to be of guidance in interpreting the term "counterfeit mark" in 18 U.S.C. § 2320(d)(1), this Court will not deny the existence of a relationship between the Trademark Counterfeiting Act of 1984 and the civil provisions of the Lanham Act. In the Joint Statement on Trademark Counterfeiting Legislation, Congress expressed its observations:

> Proposed subsection 18 U.S.C. § 2320(d)(1)(A)(iii) states that a 'counterfeit mark' must be one the use of which is likely 'to cause confusion, to cause mistake, or to deceive.' This is the key phrase in the remedial section of the Lanham Act, 15 U.S.C. § 1114, and its inclusion here is intended to ensure that no conduct will be criminalized by this act that does not constitute trademark infringement under the Lanham Act. As a practical matter, however, this element should be easily satisfied if the other elements of a 'counterfeit mark' have been proven—since a counterfeit mark is the most egregious example of a mark that is likely to cause confusion.

*Cong. Rec.* H12878 (daily ed. Oct. 10, 1984). Cases under the Lanham Trade-Mark Act

have found that the difference in price between products is simply not dispositive in itself. Rather, difference in price between the products is one factor to be considered in assessing product proximity and likelihood of confusion. *See Information Clearing House Inc., v. Find Magazine,* 492 F.Supp. 147, 158 n. 32 (S.D.N.Y.1980). This Court finds that a Dismissal of an Indictment based on a determination that the use of the goods is not likely to cause confusion, to cause mistake, or to deceive because of a difference in price between the alleged "counterfeit" and the genuine product not only usurps the function of the jury in this regard, but also gives one factor too much weight in assessing product proximity.

■ Second, this Court has another difficulty with the Dismissal of an Indictment on the basis articulated in Judge Roettger's Order of Dismissal. The Trademark Counterfeiting Act and its civil kindred, the Lanham Act, are not just designed for the protection of consumers. They are likewise fashioned for the protection of trademarks themselves and for the prevention of the cheapening and dilution of the genuine product. When courts find that selling an item at an excessively cheap price precludes a finding that such an item is "counterfeit" under 18 U.S.C. § 2320(d)(1) in that the use of the goods is not likely to cause confusion, to cause mistake, or to deceive, they are, in effect, thwarting the purposes behind such legislation. But beyond that, such a finding is tantamount to sanctioning the very introduction into commerce of fakes that are sold at low prices.