**ROLEX WATCH U.S.A., INC., Plaintiff,**

v.

**Norman CANNER; Leonard Gutterman, et al., Defendants.**

**No. 85–6471–CIV–EPS.**

United States District Court,
S.D. Florida,
Miami Division.

Aug. 29, 1986.

Kevin Murray, Miami, Fla., for plaintiff.

Todd Aronovitz, Miami, Fla., for Stein defendants.

John Wilkes, Ft. Lauderdale, Fla., for defendants Torkington, Canner and Gutterman.

**MEMORANDUM OPINION & ORDER ENTERING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF ON THE ISSUES OF LIABILITY AND PERMANENT INJUNCTIVE RELIEF AGAINST STEIN DEFENDANTS AND DEFENDANTS, TORKINGTON, CANNER, AND GUTTERMAN**

SPELLMAN, District Judge.

## I

## BACKGROUND

This CAUSE comes before the Court on the Plaintiff's, Rolex Watch U.S.A. Inc's, Motion for Reconsideration of its Motion for Summary Judgment on the Issues of Liability, Permanent Injunctive Relief, Damages & Attorneys' Fees against the Defendants, Larry Stein, individually and d/b/a "Larry's Enterprises", Larry's Enterprises, Joe Stein, individually and d/b/a "The Watch Lady", Doris Stein, individual-

ly and d/b/a "The Watch Lady" and The Watch Lady [hereinafter referred to as the Steins] and on the Plaintiff's Motion for Summary Judgment on the Issues of Liability and Permanent Injunctive Relief against the Defendants, John Torkington [hereinafter referred to as Torkington], Norman Canner [hereinafter referred to as Canner], and Leonard Gutterman individually and d/b/a "Watches Unlimited" [hereinafter referred to as Gutterman].

The Plaintiff herein has alleged that the Defendants have participated in the sale of counterfeit Rolex watches to Rolex investigators. Based upon the sworn declarations of the investigators, this Court entered an Order to Show Cause for Preliminary Injunction with Search and Seizure and Temporary Restraining Order and Expediting Discovery on June 20, 1985. On June 23, 1985, several Deputy United States Marshals seized counterfeit watches and pouches bearing the Rolex trademarks from the Defendants.

On July 1, 1985, this Court entered a Preliminary Injunction against the Defendants. Shortly thereafter, the Defendants were deposed. During their depositions, the Defendants each asserted their fifth amendment privilege against self-incrimination with respect to all questions concerning the sale and distribution of the counterfeit watches. In addition, the Defendants have each asserted their fifth amendment privilege in response to much of the written discovery served on them.

On December 9, 1985, this Court entered an Order requiring the Defendants to elect whether they would reassert at trial their fifth amendment privilege against self-incrimination and for other related relief. On January 9, 1986, the Defendants served their notice in which they elected to reassert their fifth.[1]

Initially this matter came before the Court on the Plaintiff's Motion for Summary Judgment against the Steins. On March 31, 1986, this Court issued an Order Denying the Motion. Subsequent to this determination in the civil matter, this Court presided over a criminal case involving trademark counterfeits. After the criminal trial, this Court began to reconsider the central inquiry in the matter *sub judice* and to pursue a more meaningful analysis of the question of whether there is a likelihood of confusion between the registered mark and the allegedly infringing mark. This Court was of the opinion that another opportunity to review the Motion would be of assistance to this Court and possibly facilitate an orderly and just disposition of the case. The Court then directed the Plaintiff to file a Motion for a Reconsideration of its Motion for Summary Judgment against the Steins. The Plaintiff also filed a Motion for Summary Judgment against the Defendants, Torkington, Canner, and Gutterman. On August 11, 1986, this Court heard extensive oral argument on the Motions.

Both the Motion for Summary Judgment against the Steins and the Motion for Summary Judgment against Torkington, Canner, and Gutterman present the following issues:

(1) whether the Defendants have committed trademark infringement under 15 U.S.C. § 1114(1);

(2) whether the Defendants have falsely designated within the meaning of 15 U.S.C. § 1125(a), the origin of goods they have offered for sale;

(3) whether the Defendants have engaged in unfair competition under the common law of Florida.

The Plaintiff has indicated that it is not requesting that this Court enter Summary Judgment on each count of its First Amended Complaint. Instead, the Plaintiff has indicated that if Summary Judgment is

---

**1.** Under this Court's Order of December 9, 1985, the Defendants will be precluded from offering substantive testimony and from introducing documentary evidence. They will be available at trial to be called as witnesses for purposes of re-asserting their fifth amendment privilege. In effect, the Defendants cannot controvert evidentiary matters on which Rolex bases its Summary Judgment Motions. This Court is of the view that because of the record before the Court and because of the Defendants' election to assert their fifth amendment privilege, a trial would be an exercise in futility and a waste of judicial resources.

entered, it is willing to waive the claims it has asserted in Counts Four and Five of its First Amended Complaint. Count Four raises a civil theft claim under Fla.Stat. § 812.035(7), for violation of Fla.Stat. § 812.014. Count Five is a claim under Florida's "anti-dilution" Statute, Fla.Stat. § 495.151.

The Motion for Summary Judgment filed against the Steins raises two additional questions:

(1) whether Rolex is entitled to damages (and, if so, what type and in what amount);

(2) whether Rolex is entitled to attorney's fees.

With respect to the Defendants', Torkington, Canner, and Gutterman, the Plaintiff requests that this Court enter Summary Judgment as to the issues of liability and injunctive relief. The Plaintiff asks this Court to enter such judgment and leave the issue of damages opened at this juncture.

This Court has been mindful of the burden to be borne by a litigant seeking to prevail on a Motion for Summary Judgment. The Movant must demonstrate that there is no dispute as to any material fact in the case. *See Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In assessing whether the burden has been met, courts should view the evidence in the light most favorable to the opposing party. *See id; Clemons v. Dougherty, Georgia,* 684 F.2d 1365, 1368 (11th Cir.1982).

After reviewing the Plaintiff's Motions, the Defendants' Responses, the Plaintiff's replies, the respective memoranda of law, the affidavits, and the file in the above-styled Cause, and after having heard oral argument, this Court is of the opinion that the Plaintiff has met its burden and is entitled to a Judgment as a matter of law on the issues of liability and permanent injunctive relief.

## II

### TRADEMARK INFRINGEMENT & FALSE DESIGNATION OF ORIGIN

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) governs lawsuits for the infringement of a federally registered trademark. It provides:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

The Defendants are thus liable for infringement if, without the consent of the registrant, they use *"in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark"* which "is likely to cause confusion, or to cause mistake, or to deceive." The pivotal question under this provision is whether there is a likelihood of confusion, mistake, or deception between the registered mark and the allegedly infringing mark where the infringer places the counterfeits *in commerce.*

Title 15 § 1125(a) provides:

Any person who shall affix, apply, or annex, or use in connection with any

goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false designation or representation.

To prevail on a false designation of origin claim under 15 U.S.C. § 1125(a), the Plaintiff must establish that the Defendant adopted a mark confusingly similar to the Plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods. *See Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1512 (11th Cir.1984). The factors relevant to establishing a claim under 15 U.S.C. § 1125(a) are identical to the factors relevant to establishing the likelihood of confusion under 15 U.S.C. § 1114. *See Ross Bicycles, Inc. v. Cycles USA, Inc.,* 765 F.2d 1502, 1503 (11th Cir.1985).

■ In *John A. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 972 (11th Cir. 1983), the court set forth the factors to be considered when analyzing whether there is a likelihood of confusion between the two marks:

This court and the former Fifth Circuit have identified a number of factors which should be considered when analyzing whether there is a likelihood of confusion between two marks. Among the factors are 'the type of trademark, the similarity of design, the similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendant's intent and actual

confusion.' *Exxon Corp. v. Texas Motor Exchange, Inc.,* 628 F.2d 500, 504 (5th Cir.1980).

This Court, however, does not acquiesce in the Defendants' overall perspective on this seven-part test. The Defendants have focused on the initial sale of the watches at the flea market and have argued that with respect to the immediate transactions, there was no likelihood of confusion. This Court finds this view to be an example of statutory myopia. What occurs in the mind of a particular seller or in the mind of a single buyer within the narrow arena of a flea market is simply irrelevant to the real and broader inquiry required of a court faced with the task of determining liability in a trademark infringement case. "Commerce" is the key word in the statute and paramount to the very objectives of the law. In evaluating whether there has been a "likelihood of confusion," courts must decide whether counterfeit goods have been injected into *commerce* or have become part of the interchange of goods in the market place. A correct and more meaningful analysis of the seven factors compels this Court to conclude that the Steins and the Defendants, Torkington, Canner, and Gutterman, have engaged in willful and deliberate counterfeiting activities in commerce which are likely to confuse the consuming public.

### A. TYPE OF TRADEMARK

■ This Court finds that Rolex is properly classified as an "arbitrary" or "fanciful" trademark which is considered strong and is given "protection over a wide range of related products and variations in appearance of the mark." *See John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 974 (11th Cir.1983), *quoting* 1 J. McCarthy, *Trademarks & Unfair Competition* § 11.24, at 398 (1973). Since the Rolex trademarks are strong, they are thus entitled to a high level of protection.

### B. SIMILARITY OF DESIGN

Although this issue was not a source of contention here, this Court finds this factor

to be of great significance. This Court will then proceed to discuss the main thrust of the Plaintiff's position in this regard and review the events that transpired at the Hearing.

■ Similarity of design is "determined by considering the overall impression created by the mark[s] as a whole rather than simply comparing individual features of the marks." *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 504–5 (5th Cir. 1980); *see also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir.1983).

This Court agrees with the Plaintiff that "the instant case presents the most compelling facts imaginable." *See* Rolex' Memorandum in Support of its Motion for Summary Judgment on the Issues of Liability and Permanent Injunctive Relief against the Defendants, John Torkington, Norman Canner, and Leonard Gutterman at pages 12–13 and Plaintiff's Memorandum in Support of its Motion for Reconsideration against the Steins at page 8. It is not disputed that these Defendants have sold watches bearing trademarks absolutely identical to the Rolex trademarks.

At the Hearing, counsel for the Plaintiff presented this Court with genuine watches and counterfeit watches for inspection. The Court placed both products side-by-side and held them up for comparison. This Court expressed its view that the watches were not just similar, they were identical. Counsel for the Defendant agreed with this Court's assessment that it was difficult, if not impossible, to distinguish between the two products.

This Court is of the view that a finding other than the existence of a likelihood of confusion between the genuine product and the imitation would confound reason and thwart common sense. Subsequent to the Hearing, this Court requested that counsel for the Plaintiff file with the Court photographs depicting the counterfeit and the genuine watch. An examination of these exhibits can only serve to confirm this Court's impression that the two products are virtually indistinguishable. *See* Exhibit A Attached.

EXHIBIT A

 

Genuine Rolex Watch                    Counterfeit Rolex Watch

---

C. SIMILARITY OF PRODUCTS

The "greater the similarity between the products and services, the greater the likelihood of confusion." *Exxon v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 504–5 (5th Cir.1980); *see also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir.1986). As discussed above, this is not just a case where two products are similar: this is an instance where the genuine and the counterfeit are the same.

This Court is not surprised to learn that "in several instances, owners of watches falsely bearing the Rolex trademarks have brought these counterfeit watches into authorized Rolex jewelers and authorized Rolex service centers to be repaired, believing their counterfeit watches to be genuine." *See* Declaration of Rene Girod, the Executive Vice President of Rolex Watch U.S.A., Inc., attached as Exhibit 1 to the Plaintiff's Statement of Material Facts not in Dispute

as to each Defendant. *See* Exhibit B Attached.

## EXHIBIT B

Genuine Rolex Watch          Counterfeit Rolex Watch

### D.  DEFENDANT'S INTENT

██  Although the task of assessing the likelihood of confusion involves the application of objective factors, the Defendants' subjective intents are also relevant:

[C]ourts also examine the defendant's subjective intent. Indeed, the former Fifth Circuit once stated that if 'a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone "may be sufficient to justify the inference that there is confusing similarity." ' *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d at 506 (quoting Restatement of Torts § 729, Comment (f) (1938); *see also Sun Banks v. Sun Federal Savings & Loan Ass'n*, 651 F.2d

[311] at 318–19 ("That a latecomer adopts another's name or mark, deliberately seeking to capitalize on the other's reputation and benefit from the confusion, is an important factor for any court.") *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 977 (11th Cir.1986).

▮ This Court can not abide by the Defendants' contention that the absence of an intent to pass off the $25.00 imitations as the genuine Rolex watches precludes this Court from finding that the Plaintiff has established the requisite element of intent. It has not been disputed that Rolex never authorized these Defendants to offer for sale the counterfeit Rolex watches that were seized on June 23, 1985. By selling the bogus watches, only one inference may be drawn: the Defendants intended to derive benefit from the Plaintiff's reputation. This inference is no less reasonable when weighed against the Defendants' assertion that in selling these watches, they did not fail to inform the recipients that they were counterfeits.

### E. ACTUAL CONFUSION

▮ One of the greatest sources of conflict raised in these pleadings and explored at the Hearing before this Court is this element of actual confusion. The Defendants insist that the Plaintiff has failed to establish this factor. The Steins argue that this is demonstrated by the Deposition testimony of Glenn Kutner and Delores Little. According to the Defendants, the Deponents claim that no one would ever expect to purchase, nor intend to purchase a genuine Rolex watch for $25 at a flea market. *See* the Steins' Memorandum of Law in Opposition to the Plaintiff's Motion for Reconsideration at page 3. This Court, however, is not persuaded by this approach. A determination of the existence of actual confusion has nothing to do with the immediate purchaser who might be mislead or confused by the infringing product. Such an interpretation ignores the interest in protecting the consumer at large, denies the very manner in which products move through the market place, slights the goal of securing to the owner of the trademark the goodwill of the business, and loses sight of the center stage on which these cases must be played. The essence of trademark law is commerce.

The real question before this Court is whether the alleged infringer has placed a product *in commerce* that is "likely to cause confusion, or to cause mistake, or to deceive." This is borne out by the very changes the statute has undergone since the enactment of the Trademark Act in 1905. Pursuant to the 1905 version, a trademark was protected only from a similar mark being placed on "[goods] of the same descriptive properties" as those marketed by the owner of the trademark. *See Amp. Inc. v. Foy,* 540 F.2d 1181, 1184 (4th Cir.1976); *HMH Publishing Co. Inc. v. Brincat,* 504 F.2d 713, 716 (9th Cir.1974). The Lanham Act, passed in 1946, granted protection against the use of marks "likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services." In 1962, this language was deleted and courts now need find only a use which is "likely to cause confusion, or to cause mistake, or to deceive." *See Syntex Laboratories v. Norwich Pharmacal Company,* 437 F.2d 566, 568 (2nd Cir.1971). This deletion serves to broaden the protection afforded by the Act. The Act endeavors not just to protect a purchaser, but instead aims to prevent mistake, deception, and confusion in the market place at large.[2]

---

**2.** In *Rolls-Royce Motors Ltd., v. A & A Fiberglass, Inc.,* 428 F.Supp. 689 (N.D.Ga.1976), the court found in favor of Rolls-Royce Motors who brought an action against a manufacturer of automobile customizing kits, claiming that one of the defendant's kits infringed on its grill and hood ornamentation designs. The court's perspective on the question, "the likelihood of confusion," was in conformity with the intent of Congress to protect the public at large. The court stated:

> [C]onfusion need not always be that of a potential purchaser but can exist where 'the defendant duplicated the protected trademarks and sold them to the public knowing that the public would identify them as being the [plaintiffs'] trademarks.'

This Court is of the belief that not only does the Defendants' narrow view of the confusion question jar with the evolution of the Act, but also that it serves to undermine the effect of the law. The fact that an immediate buyer of a $25 counterfeit watch does not entertain any notions that it is the real thing has no place in this analysis. Once a product is injected into commerce, there is no bar to confusion, mistake, or deception occurring at some future point in time.

> *Id.* at 694, *quoting Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg. Inc.,* 510 F.2d 1004, 1012 (5th Cir.1975).

**3.** This Court can envision a scenario where an individual sporting a gold counterfeit Rolex watch walks through the metal detector at an

As discussed above, at the Hearing, this Court viewed the two watches in proximity to each other and found them to be virtually identical. *See* Exhibit C Attached. This Court is not surprised to learn of instances where owners of these fakes have unknowingly brought them into Rolex jewelers and service centers to be repaired. Nor would this Court be amazed to hear of instances where such bogus watches are being passed off quite successfully as the genuine items.[3]

airport only to discover that he has triggered the alarm. When he attempts to remove the watch, the guards keep insisting that a gold Rolex watch cannot be the problem. If the "sport" isn't confused, certainly the guards should be.

EXHIBIT C

Genuine Rolex Watch          Counterfeit Rolex Watch

---

The danger of confusion, as Congress perceived it, was never intended to direct itself to the transaction in this case—that moment in time when a single merchant reaches behind a counter at a flea market and clandestinely hands over the imitation to a buyer who is aware that it is a $25 look-alike. It is this Court's opinion that Congress never intended to embrace the narrow concept of likelihood of confusion offered by the Defendants. A practical application of the Defendants' theory is to make the statute in question ineffective and for all intents, useless. Instead, the danger of confusion is inseparable from the counterfeit itself, an object which by its very nature is capable of being sold and re-sold in a variety of contexts and is able to enter and move through commerce.

The Act, however, does not merely aim to protect the public. It also serves to protect the association between the mark

and the product and guard against the cheapening of the product itself. To accept the Defendants' contention that because a purchaser does not intend to buy a real Rolex for $25 at a flea market, there is no likelihood of confusion between the two products is to frustrate these other purposes behind the Lanham Act. In a criminal matter, this Court articulated its reasons for rejecting arguments like the one raised by the Defendants herein and distinguished its position from the one set forth in Judge Roettger's Order of Dismissal. This Court stated as follows:

> The Trademark Counterfeiting Act and its civil kindred, the Lanham Act, are not just designed for the protection of consumers. They are likewise fashioned for the protection of trademarks themselves and for the prevention of the cheapening and dilution of the genuine product. When courts find that selling an item at an excessively cheap price precludes a finding that such an item is "counterfeit" under 18 U.S.C. § 2320(d)(1) in that the use of the goods is not likely to cause confusion, to cause mistake, or to deceive, they are, in effect, thwarting the purposes behind such legislation. But beyond that such a finding is tantamount to sanctioning the very introduction into commerce of fakes that are sold at low prices.

*United States v. Gonzalez*, 630 F.Supp. 894, 896 (S.D.Fla.1986). This Court adheres to its initial position in this regard.

At this juncture, the Court can only speculate as to the forms such cheapening or dilution might take and the injuries that might ensue. Individuals examining the counterfeits, believing them to be genuine Rolex watches, might find themselves unimpressed with the quality of the item and consequently be inhibited from purchasing the real time piece. Others who see the watches bearing the Rolex trademarks on so many wrists might find themselves discouraged from acquiring a genuine because the items have become too common place and no longer possess the prestige once associated with them. The fact that such bogus watches can be obtained at cheap prices only aggravates the problem. For these reasons, the legislators, proposing to provide nationwide protection for expanding businesses, did not intend a cheap price to excuse the offense of infringement.

■ In sum, this Court finds that in light of the legislative history and purpose, the facts alleged by the Defendants do not defeat the Plaintiff's Motions for Summary Judgment. They simply have no application to the real inquiry—whether there is a likelihood of confusion in commerce. After pursuing the appropriate inquiry, this Court finds that there are no genuine issues of material fact in this regard and that there is actual confusion between the Rolex trademarks and the Defendants' counterfeit products.[4]

## F. IDENTITY OF RETAIL OUTLETS AND PURCHASERS AND SIMILARITY OF ADVERTISING MEDIA USED

The Defendants have contended that the Plaintiff has failed to meet the identity of retail outlets and purchasers' test and argue that in this instance there is no duplication of the advertising media used.

First, this Court will respond to such assertions by pointing out that it is not necessary for a court to find the existence of *all* seven factors in order to conclude that the Plaintiff has sustained its claims under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a). *See Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir.1984).

■ Second, this Court does not hesitate to reiterate its position that dissimilarities between retail outlets for and the predominant customers of the Plaintiff's and the

---

**4.** When this Court addressed the question of whether there is actual confusion between the genuine product and the counterfeit and examined the two products side-by-side (as they are displayed in the Exhibits throughout the body of this Opinion), the Court was reminded of Justice Stewart's renowned statement, "But I know it when I see it." *Jacobelis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964).

Defendants' goods with respect to the initial sales do not prevent this Court from finding that there is a likelihood of confusion, mistake, or deception between the two products *in commerce.* Nor is this Court persuaded that because these Defendants claim not to advertise their products and the Plaintiff spent in excess of $15,000,000 in advertising over the last six years, there is no likelihood of confusion. For the reasons stated above, this Court believes that it must look beyond the initial sale to the impact on the public at large and to the effect on the owner of the trademark. Further, this Court finds that in this instance the great disparity in the advertising campaigns of the Plaintiff and of the Defendants augurs in favor of finding for Rolex. The Defendants should not be permitted to take a free ride on the Rolex reputation and benefit from the Rolex advertisements.

Accordingly, this Court finds that in light of the undisputed facts present in this record, there is a likelihood of confusion, mistake, or deception between the federally registered and incontestable Rolex trademarks and the bogus marks on the counterfeit watches sold by the Defendants. The Defendants have committed acts of trademark infringement under 15 U.S.C. § 1114(1) and unfair competition under § 1125(a).

### III

### UNFAIR COMPETITION UNDER THE COMMON LAW OF FLORIDA

In support of its request for this Court to uphold Rolex' unfair competition claim against the Defendants, the Plaintiff asserts that the sale of counterfeit watches tarnishes its reputation, undermines its sales credibility, and reduces the demand for the genuine product. *See* Declaration of Rene Girod ¶¶ 4, 5. This Court finds the Plaintiff's argument in this regard to have merit.

Accordingly, this Court finds that in addition to violating the federal statutes, these Defendants have engaged in unfair competition under the common law of Florida. See *Chemical Corp. of America v. Anheuser-Busch, Inc.,* 306 F.2d 433, 437 (5th Cir.1962); *Hertz Equipment Rental Corp. v. Hertz Equipment International Inc.,* 281 F.Supp. 1010 (S.D.Fla.1967).

### IV

### ISSUE OF DAMAGES

In the Plaintiff's Motion for Summary Judgment against the Defendants', Torkington, Canner, and Gutterman, the Plaintiff indicates that this Court should enter Summary Judgment as to the issues of liability and injunctive relief, but leave open the issue the damages. In Rolex' Motion for Summary Judgment against the Steins, the Plaintiff does address the damages question. In addition, Rolex requests this Court to make a determination that it is entitled to reasonable attorneys' fees. All such issues shall be held in abeyance and dealt with by subsequent Order of this Court.

### V

### CONCLUSION

This Court has reviewed the Plaintiff's Motions for Summary Judgment filed against the Defendants, Torkington, Canner, and Gutterman and the Plaintiff's Motion for a Reconsideration of its Motion for Summary Judgment against the Steins. This Court finds that there are no genuine issues of material fact in dispute and that the Plaintiff is entitled to a Judgment as a matter of law. Accordingly, it is hereby,

ORDERED AND ADJUDGED as follows:

1. The Order of March 31, 1986 Denying Plaintiff's Motion for Summary Judgment against Defendants, Larry Stein Individually and D/B/A "Larry's Enterprises", Larry's Enterprises, Joe Stein, Individually and D/B/A "The Watch Lady," Doris Stein, Individually and D/B/A "The Watch Lady" and The Watch Lady is VACATED.

2. The Plaintiff, Rolex Watch U.S.A., Inc. is entitled to the Entry of Summary

mala<br>

Judgment on the Issues of Liability and Permanent Injunctive Relief against the Defendants, Larry Stein, individually and d/b/a "Larry's Enterprises", Larry's Enterprises, Joe Stein, individually and d/b/a "The Watch Lady," Doris Stein, individually and d/b/a "The Watch Lady" and The Watch Lady and against the Defendants, John Torkington, Norman Canner, and Leonard Gutterman. The Plaintiff is directed to submit a partial Summary Final Judgment on the issue of liability within ten (10) days from the date of entry of this Order.

3. The issue of Damages and Attorneys' Fees is HELD IN ABEYANCE subject to further Order of this Court.