**UNITED STATES of America,**

v.

**Alfonso INFURNARI, Defendant.**

**No. CR–85–79C.**

United States District Court,
W.D. New York.

Oct. 28, 1986.

Roger P. Williams, U.S. Atty. (Joseph M. Guerra III, and Michael A. Battle, Asst. U.S. Attys., of counsel), Buffalo, N.Y., for U.S.

Condon, La Tona, Pieri & Dillon (John W. Condon, Jr., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

At the conclusion of jury selection in this case, both parties requested a pretrial ruling from the court as to the elements of the Trademark Counterfeiting Act, 18 U.S.C. § 2320. Counts I and II of the indictment charge defendant with trafficking or attempting to traffic in counterfeit Rolex and Piaget watches, in violation of section 2320. The parties have filed briefs in support of their respective interpretations of the statute.

Section 2320 authorizes criminal sanctions for certain activities involving the use of counterfeit marks. The statute was enacted less than two years ago, as part of the Comprehensive Crime Control Act of

1984. Section 2320 provides, in pertinent part:

(a) Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall, if an individual, be fined not more than $250,000 or imprisoned not more than five years, or both, and, if a person other than an individual, be fined not more than $1,000,000.

\* \* \* \* \* \*

(d) For the purposes of this section—
(1) the term "counterfeit mark" means—

(A) a spurious mark—

(i) that is used in connection with trafficking in goods or services;

(ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

(iii) the use of which is likely to cause confusion, to cause mistake, or to deceive;

\* \* \* \* \* \*

(2) the term "traffic" means transport, transfer, or otherwise dispose of, to another, as consideration for anything of value, or make or obtain control of with intent so to transport, transfer, or dispose of ....

The parties agree that the elements of the crime are: 1) intentional trafficking or attempted trafficking in goods (section 2320(a)); 2) use of a counterfeit mark that is (a) spurious; (b) used in connection with trafficking in goods; (c) identical to or substantially indistinguishable from a registered trademark; and (d) likely to cause confusion, mistake, or deception (section 2320(d)(1)(A)); and 3) knowing use of a counterfeit mark (section 2320(a)).

The parties disagree as to whether there is a knowledge or intent requirement associated with the second element, the definition of counterfeit mark. Defense counsel contends that a defendant must act either knowingly or intentionally as to each of the four subparts of the definition. The government maintains that this interpretation is contrary to both the language of the statute and its legislative history.

I find that the defendant must have knowledge as to each of the subparts of the second element. Section 2320(d)(1)(A) of the statute, which provides a definition of the term "counterfeit mark," does not explicitly require knowledge or intent. However, section 2320(a) requires "knowing use" of a counterfeit mark. "Counterfeit mark" has a technical definition under the statute; a mark must meet the listed criteria to fall within the definition. An individual cannot be convicted under the statute unless he knows the mark is counterfeit, as defined in section 2320(d)(1)(A). For example, if a defendant did not know the mark was spurious, or that it was likely to cause confusion, he could not know the mark was counterfeit.

As noted in the legislative history:

[The bill] provides for stiff criminal penalties for those who intentionally traffic in goods or services *knowing them to be counterfeit* .... Of course, a person who trafficked in counterfeit goods or services without the mental state required by this bill might still be civilly liable under the Lanham Act or similar State statutes, which do not require proof of the defendant's state of mind.

S.Rep. No. 98–526, June 21, 1984, p. 11, *reprinted in* 1984 U.S.Code Cong. & Ad. News, 3627, 3631 (emphasis added).

Furthermore, the definition of "counterfeit mark" contains an aspect for which knowledge is explicitly *not* required, implying that knowledge is necessary for the remaining parts of the definition. Under section 2320(d)(1)(A)(ii), the counterfeit mark must be identical with or substantially indistinguishable from another mark, one which is registered with the U.S. Patent and Trademark Office. The statute specifically provides that the defendant

need not know whether the other mark is actually registered.

It is the court's view that in a prosecution under 18 U.S.C. § 2320, the government must prove that defendant knew the mark is counterfeit: that he knew that the mark is spurious, that it is used in connection with trafficking in goods or services, that it is identical to or virtually indistinguishable from another mark, and that it is likely to cause confusion, mistake, or to deceive. As noted above, while the legitimate mark must have been registered with the patent office, whether defendant was aware of that fact is immaterial.

█ The other issue raised by the parties is whether the likelihood of confusion is to the immediate purchaser or to the public at large. Defendant maintains that he must have known that there was a likelihood that his immediate purchaser would be confused or misled. The government believes it is sufficient that there is a likelihood of confusion, mistake, or deception to any member of the public, even a mere viewer of the article, whether or not there was any likelihood that the immediate purchaser would be confused. (*See* Proposed Charges, p. 8, ¶ 8 of the Government's Brief.)

It appears that this issue will not arise frequently in criminal prosecutions under statute since, for the most part, those who traffic in counterfeit goods seek to confuse or defraud the immediate buyer. 1184 U.S. Code Cong. & Ad.News at 3627. In the instant case, however, this point could be crucial. The court has been advised that the evidence may show that Mr. Infurnari told his customers that the watches were not actual Rolex or Piaget watches.

The operative language in the criminal statute, 18 U.S.C. § 2320, "the use of which is likely to cause confusion, to cause mistake, or to deceive," is the same as the language in the Lanham Act, 15 U.S.C. § 1114(1)(a). Case law has made clear that post-sale confusion as to the source of a product is actionable under the Lanham Act. *Lois Sportswear v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir.1986); *Grotrian*

*v. Steinway & Sons*, 523 F.2d 1331, 1342 (2d Cir.1975); and *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566 (2d Cir.1971). There is no clear indication in section 2320 or its legislative history as to the intended scope of that phrase and whether it is to be the same as the civil statute.

Two recent cases have addressed this issue. In *United States v. Torkington*, Cr. 85–6168 (S.D.Fla. February 10, 1986), the court dismissed an indictment charging defendant with violating 18 U.S.C. § 2320 for selling two replica Rolex watches. The court found that the goods were not counterfeit under section 2320 because it was unlikely that a purchaser would be confused into believing that a watch which sold for $27 was a genuine Rolex watch, which sold for thousands of dollars. The court noted that although there may have been a possibility that those who viewed the watch *after* the sale would be confused, it was unlikely that the purchaser would be confused. This case is currently on appeal before the United States Court of Appeals for the Eleventh Circuit.

In *United States v. Gonzalez*, 630 F.Supp. 894 (S.D.Fla.1986), the court declined to follow *Torkington*, noting that the criminal Trademark Counterfeiting Act and the civil Lanham Act seek to protect both consumers and manufacturers, to protect trademarks in and of themselves, and to prevent "the cheapening and dilution of the genuine product." *Id.* at 896.

The Trademark Counterfeiting Act subjects those who traffic in goods involving the knowing use of counterfeit marks to criminal sanctions. The purpose of the Act is to fight this "rapidly growing form of commercial fraud." 1984 *U.S.Code Cong. & Ad.News*, at 3627, *see* 3627–32.

It appears that Congress did not have a case like Mr. Infurnari's in mind when it passed 18 U.S.C. § 2320. Nonetheless, Congress chose to use the same operative language in the criminal trademark act as in the Lanham Act. Both the Second and Ninth Circuits had already held that post-

sale confusion was actionable when section 2320 was passed. *See Syntex Laboratories, supra,* and *Levi Strauss v. Blue Bell, Inc.,* 632 F.2d 817 (9th Cir.1980). As was noted in *Gonzalez, supra,* the act is also intended to benefit manufacturers and the integrity of trademarks.

Requiring that the defendant had knowledge that goods bearing a counterfeit mark would cause confusion, mistake, or would deceive either the immediate purchaser or prospective purchasers who would later view the product is not inconsistent with Congress's goals in enacting section 2320.

The court will meet with counsel on October 30, 1986, at 9 a.m. to discuss plans for trial.

So ordered.