**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Myong Hwa SONG,
Defendant–Appellant.**

No. 89–2453.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1991.

Decided May 31, 1991.

**106**

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, Ind., Thomas O. Plouff, Asst. U.S. Atty.; South Bend, Ind., for plaintiff-appellee.

Robert C. Perry, Indianapolis, Ind., for defendant-appellant.

Before CUMMINGS, RIPPLE, and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Myong Hwa Song was a Korean vendor of fake designer watches and handbags who operated out of a flea market booth. One day a friend manning her booth tried to sell a Gucci watch to undercover agents. The agents knew after examining the watch that it was fake. With Ms. Song's consent they searched the booth and the van she used to store her merchandise, seizing about $60,000 in counterfeit goods. Following the seizure, Ms. Song was charged with five counts of counterfeit trafficking, in violation of 18 U.S.C. §§ 2320 and 2. A jury convicted Ms. Song on all five counts. She was sentenced to a fourteen-month term of imprisonment with a three-year term of supervised release. Ms. Song appeals from her convictions and sentence.

## I. STATEMENT OF THE FACTS

On September 13, 1988, Ms. Song ran a booth at the flea market in Shipshewana, Indiana, where she sold imitation designer watches and handbags. That morning she had a friend, Seung Gil Cha, work the booth for her. While Mr. Cha was at the booth, two undercover customs agents approached him. They had come to the flea market in an investigation of illegally imported merchandise. The agents asked Mr. Cha if the goods were for sale. Mr. Cha replied that they were. One of the agents asked for the price of a Gucci watch and was told that the watch sold for $35. Because of its low price, the agents knew that the watch was phoney. They thereupon identified themselves to Mr. Cha and asked for the owner of the booth. Mr. Cha directed them to Ms. Song.

Ms. Song walked up to the agents and acknowledged that she was the owner. With her consent, the agents searched the

van she used to store her goods and seized its contents. During the seizure, they uncovered a large quantity of imitation merchandise, including 416 Rolex watches, 339 Gucci watches, 1,289 Louis Vuitton handbags, 61 Movado watches, 18 Cartier watches and 3 Piaget watches. Ms. Song admitted to the undercover agents that she knew the goods were fake.

On January 12, 1989, a federal grand jury returned an indictment charging Ms. Song with five counts of intentionally trafficking in goods known to be counterfeit, in violation of 18 U.S.C. §§ 2320 and 2. Each count alleged that the offense occurred on September 13, 1988, and was essentially the same in all other respects, except for the identity of the owner of the trademarks: count 1 named Rolex, count 2 named Louis Vuitton, count 3 named Gucci, count 4 named Movado, and count 5 named Cartier. Prior to trial, Ms. Song moved to dismiss the indictment, arguing that the five counts arose out of a single transaction and were multiplicitous, but the district court denied the motion.

On April 27 and 28, 1989, the case came before the district court for a jury trial. At trial, representatives from Rolex, Movado and Cartier testified to the similarities between their watches and the watches Ms. Song offered for sale. With respect to the Louis Vuitton and Gucci goods seized from Ms. Song, the parties stipulated that these goods were counterfeit. The jury found Ms. Song guilty on all five counts.

Ms. Song thereafter moved the district court to vacate her convictions on counts 2, 3, 4 and 5 as being multiplicitous. The district court again rejected Ms. Song's multiplicity argument. It found that the language of § 2320 "d[id] not unambiguously indicate its appropriate unit of prosecution," but that the legislative history "[was] not unhelpful." Construing the purpose of § 2320 to protect manufacturers, the district court concluded that "the appropriate unit of prosecution under 18 U.S.C. § 2320 is the trademark or perhaps the manufacturer that holds the trademark," and therefore the convictions were not multiplicitous.

On June 30, 1989, the district court held a sentencing hearing. At the hearing, the district court computed Ms. Song's offense level at 11. This number consisted of a base level of 6, plus a five-level increase based on the total value of the goods involved. *See* Guideline §§ 2B5.4(a), 2F1.1. After denying a two-level reduction of the offense level for acceptance of responsibility, *see* Guideline § 3B1.2, the district court determined that Ms. Song had a criminal history category II. It arrived at this category on the basis of Ms. Song's probationary status at the time of the current crime and her 1986 conviction for trafficking in counterfeit goods. With an offense level of 11 and a criminal history category II, the guideline range was 10 to 16 months. The district court sentenced Ms. Song to fourteen months imprisonment, with a three-year term of supervised release.

Ms. Song has served her term in prison and is on supervised release.

## II. ARGUMENTS ON APPEAL

Ms. Song's first argument is that the indictment against her was multiplicitous because it charged one offense in five counts. She argues that the statutory language and legislative history of 18 U.S.C. § 2320 fail to unambiguously indicate the appropriate unit of prosecution. Given this ambiguity, the rule of lenity applies and counsels against turning a single transaction into multiple offenses.

Ms. Song's second argument is that the district court improperly denied her a two-level reduction of the offense level for acceptance of responsibility by considering her conduct and mental attitude prior to and during the offense. She argues that these considerations are irrelevant because the Guidelines concern only conduct and mental attitude subsequent to the offense.

The government argues that the language and legislative history of § 2320 clearly make the counterfeit trademark the appropriate unit of prosecution. The government also argues that the district court's factual finding that Ms. Song refused to accept responsibility for her conduct and acknowledge that she knew she

was committing a crime was not clearly erroneous.

## III. DISCUSSION

### A. Multiplicitous Counts

■ A claim of multiplicity alleges that separate counts of an indictment charge a single offense. *United States v. Marquardt,* 786 F.2d 771, 778 (7th Cir.1986). "As such, the indictment exposes a defendant to the threat of receiving multiple punishment for the same offense." *United States v. Podell,* 869 F.2d 328, 330 (7th Cir.1989). To determine whether the defendant's conduct constitutes a single offense or several it is necessary to identify the unit of prosecution of the offense charged. *Sanabria v. United States,* 437 U.S. 54, 67–70, 98 S.Ct. 2170, 2180–82, 57 L.Ed.2d 43 (1978). In identifying the appropriate unit of prosecution, the Court must first look to the language of the statute itself. *Podell,* 869 F.2d at 331. If the language of the statute is ambiguous, the Court must next look to the statute's

legislative history. *United States v. Kimberlin,* 781 F.2d 1247, 1253 (7th Cir.1985), *cert. denied,* 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986). If the legislative history does not resolve the issue, then the Court must apply the rule of lenity, a rule of statutory construction which dictates that in cases of ambiguity or doubt as to congressional intent, only one offense may be charged. *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).

■ The issue of the allowable unit of prosecution under 18 U.S.C. § 2320 is one of first impression.[1] Section 2320 punishes "whoever intentionally traffics or attempts to traffic[2] in goods or services *and knowingly uses a counterfeit mark*"[3] on such goods or services. The language of this section is clear and unambiguous. The use of the conjunctive "and" preceding the term "counterfeit mark" indicates congressional intent to prosecute one who traffics in goods *and* who uses a counterfeit mark

---

1. Cases interpreting § 2320 thus far mainly concern the confusion test for counterfeit trademarks and do not address the unit of prosecution problem presented here. Nevertheless, the factual scenarios of these cases are instructive, indicating that indictments filed under § 2320 charge variously by the sale, *see United States v. Hon,* 904 F.2d 803 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991) (first two counts seemingly based on one sale and one attempted sale occurring on two different dates one month apart; third count seemingly based on seizure); *United States v. Gantos,* 817 F.2d 41 (8th Cir.), *cert. denied,* 484 U.S. 860, 108 S.Ct. 175, 98 L.Ed.2d 128 (1987) (four counts based on three separate sales and one attempted sale occurring on four different dates within fifteen-day period); *United States v. Torkington,* 812 F.2d 1347 (11th Cir.1987) (first count based on one sale; second count based on seizure), by the customer, *see United States v. Yamin,* 868 F.2d 130 (5th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989) (three counts based on three separate sales to three different customers, including one undercover agent), or by the manufacturer, *see United States v. Infurnari,* 647 F.Supp. 57 (W.D.N.Y. 1986) (two counts seemingly based on two different manufacturers). In some cases, it is unclear how the counts are drawn. *See United States v. McEvoy,* 820 F.2d 1170 (11th Cir.), *cert. denied,* 484 U.S. 902, 108 S.Ct. 243, 98 L.Ed.2d 201 (1987); *United States v. Gonzalez,* 630 F.Supp. 894 (S.D.Fla.1986).

2. Section 2320(d)(2) defines "traffic" to mean "transport, transfer, or otherwise dispose of, to another, as consideration for anything of value, or make or obtain control of with intent so to transport, transfer, or dispose of."

3. Section 2320(d)(1) defines "counterfeit mark" as

(A) a spurious mark—

(i) that is used in connection with trafficking in goods or services;

(ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

(iii) the use of which is likely to cause confusion, to cause mistake, or to deceive; or

(B) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of the Lanham Act are made available by reason of section 110 of the Olympic Charter Act;

but such term does not include any mark or designation used in connection with goods or services of which the manufacturer or producer was, at the time of the manufacture or production in question authorized to use the mark for designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

in connection with those goods. Under this reading of § 2320, Ms. Song was properly convicted of five separate crimes, because she was trafficking in goods bearing five different counterfeit marks.

Ms. Song relies principally on *United States v. Parr,* 741 F.2d 878 (6th Cir.1984). In that case, the defendant transported three adult women in a single trip across state lines for purposes of prostitution, and was convicted on three counts of violating the Mann Act. The Sixth Circuit held that the defendant committed only one offense under the rule of *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (transportation of two women on the same trip in the same vehicle constitutes a single offense), and therefore the three counts were multiplicitous.

*Parr* is distinguishable because the purposes of the two statutes are different. The counterfeit trafficking statute was designed to protect individual victims—purchasers, manufacturers, and retailers, *see* S.Rep. No. 98–526, 98th Cong. 2d Sess. 4, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3627, 3630, while the Mann Act was enacted to preserve community morals, *see Bell,* 349 U.S. at 83, 75 S.Ct. at 622. "[W]here the legislative purpose is the protection of individual victims, the rule of lenity does not obtain." *United States v. Phillips,* 640 F.2d 87, 96 (7th Cir.), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981).

We hold that the correct unit of prosecution under § 2320 is the counterfeit mark, so the indictment charging different counterfeit marks in each count was not multiplicitous.

### B. Acceptance of Responsibility

The district court denied Ms. Song a two-level reduction for acceptance of responsibility under Guideline § 3E1.1. It concluded that she failed to sustain her burden of proving that she clearly accepted responsibility for her conduct. *See United States v. Camargo,* 908 F.2d 179, 185 (7th Cir.1990). In so concluding, the district court found that

Ms. Song knew that she was trafficking in counterfeit goods. She engaged in the conduct while on probation for trafficking in counterfeit trademarked goods. Her contention that she thought she previously had been convicted only of inaccurate completion of customs declarations forms rings hollow in light of the explanation federal courts are required to give in accepting a tendered guilty plea. She claims she thought her conduct was permissible as long as customers were told they were buying copies, but the evidence at trial indicates that the customs agents were not so told. She knew what she was doing. She had been convicted for the offense before, albeit under different circumstances.

(Memorandum and Order at 12–13) (citation and footnote omitted). These factual findings are subject to review for clear error. *See United States v. Larsen,* 909 F.2d 1047, 1049 (7th Cir.1990). There was no such error here. The district court carefully reviewed the evidence offered by both parties. Its consideration of Ms. Song's probationary status and her knowledge of the illegality of her conduct was proper, because these factors showed that she willfully and knowingly violated § 2320, and therefore were relevant to the determination of whether she accepted responsibility for her offense. *See United States v. Oliveras,* 905 F.2d 623, 630 (2d Cir.1990); *see also United States v. Mourning,* 914 F.2d 699, 706 (5th Cir.1990).

For the foregoing reasons, the judgment of the district court is

AFFIRMED.